HOVERSTOCK *v.* DARROW ET AL.

[No. 14,206. Filed February 18, 1932.]

*Fred. L. Bodenhafer* and *Luke H. Wrigley,* for appellant.

*Redmond & Emerick* and *Vermont Finley,* for apellees.

NEAL, J.—Appellant, an automobile dealer at Topeka, Indiana, hereinafter referred to as "the vendor," on April 26, 1928, sold and delivered to Eugene Darrow,

one of the appellees herein, under a conditional-sales contract, a Chevrolet coupe for the sum of $600, of which $100 was paid at the time of delivery and the remaining $500 was to be paid in two semi-annual installments of $250 each, the first of which was due six months after the execution of the contract and the second was due 12 months after such execution. On May 1, 1928, Eugene Darrow, hereinafter referred to as "the purchaser," secured a policy of fire insurance from the State Farm Mutual Automobile Insurance Company covering the automobile in question; on November 28, 1928, the automobile was completely destroyed by fire, and, on April 13, 1929, the State Farm Mutual Automobile Insurance Company issued their check of $516 to the purchaser on his claim as a result of the destruction by fire of such automobile. On the same day, he applied $466 of the proceeds of such check upon a promissory note due the Noble County Bank & Trust Company, upon which note the names of Grace McDermott and Mary Darrow (appellees herein) appeared as sureties; he also paid his attorney $25 of said insurance money for collecting the same and kept $25 for himself. The first installment of $250 was due at the time the automobile was destroyed by fire, but neither of the installments had been paid at that time and each remained unpaid at the time this suit was brought.

This action was instituted by appellant against Eugene Darrow, purchaser, Grace McDermott, Mary Darrow and the Noble County Bank & Trust Company to recover the $516 insurance money paid Eugene Darrow by the State Farm Mutual Automobile Insurance Company for the loss by fire of the Chevrolet coupe. Trial was had by the court; finding and judgment for defendants, and, plaintiff's motion for a new trial being overruled, he appeals and assigns as error the overruling of said motion, the causes of which are: (1) The decision

of the court is not sustained by sufficient evidence; and (2) the decision of the court is contrary to law.

The conditional-sales contract under which appellee Darrow purchased the automobile in question provided that "title to said property shall not pass to the purchaser until said amount is fully paid in cash." The contract further provided that "in the event the purchaser defaults on any payment or fails to comply with any condition of this contract or a proceeding in bankruptcy, receivership or insolvency be instituted against the purchaser or his property, or the seller deems the property in danger of misuse or confiscation, the full amount shall, at the election of the seller, be immediately due and payable. . . . The proceeds of any insurance, whether paid by reason of loss, injury, return premium, or otherwise, shall be applied towards a replacement of the property or payment of this obligation at the option of the seller. Seller may insure said property against fire and theft to properly protect purchaser, seller and seller's assignee. The purchaser agrees to pay the premium upon demand and that on failure to do so, payment of said premiums shall be secured by this contract."

Appellant earnestly contends that "the agreement in the conditional-sales contract that all insurance money collected should be applied on the debt, or to restore the property, made the fund in controversy, $466, paid by the insurance company, a trust fund for the benefit of the appellant to the extent of the unpaid balance on the debt, and equity will establish a lien on the fund paid to appellee bank."

It is true, as contended for by appellants, that, in the instant case, the parties occupy exactly the same position as that of a mortgagor and mortgagee, and are governed by the same rules so far as questions of insurance are concernd. See *Commercial Credit Co.* v. *Eisenhour* (1925), 28 Ariz. 112, 236 Pac.

126, 41 A. L. R. 1274; *White* v. *Gilman* (1903), 138 Cal. 375, 71 Pac. 436. It is, however, well settled in this state that "a mortgagee, merely as such, has no interest, either in law or equity, in a policy of insurance effected by the mortgagor upon the mortgaged premises for his own benefit, *independent of any covenant or contract requiring the latter to insure for the benefit of the former.*" (Our italics.) *Nordyke & Marmon Co.* v. *Gery* (1887), 112 Ind. 535, 13 N. E. 683, 2 Am. St. 219.

Appellant contends that the parties, by the clause "the proceeds of any insurance . . . shall be applied towards the replacement of the property or payment of this obligation, at the option of the seller," entered into an agreement by which the purchaser became obligated to apply the proceeds of the insurance he received upon the payment of the balance of the purchase price of the automobile. That part of the contract referring in any manner whatever to insurance, provided as follows: "The proceeds of any insurance, whether paid by reason of loss, injury, return premiums or otherwise, shall be applied towards the replacement of the property or payment of this obligation, at the option of the seller. Seller may insure said property against fire and theft to properly protect purchaser, seller and seller's assignee. The purchaser agrees to pay the premium upon demand and that on failure to do so, payment of said premium shall be secured by said contract."

As was said in *Nat. Fire Proofing Co.* v. *Imperishable Silo Co.* (1916), 63 Ind. App. 183, 112 N. E. 403: "It is a familiar principle that when a contract is to be considered or when some separate provision thereof is involved, *separate clauses and provisions will not be considered apart from the general context or apart from connected clauses,* but the meaning of the entire contract and of each of its clauses will be determined from all the language used, and the parties will

be held to have intended that meaning to each clause which makes the whole contract consistent, and which is reasonable in view of all the terms employed." If we apply the above rule, it is apparent that the vendee did not agree to keep the automobile insured. There was, therefore, no duty or obligation resting upon him to insure the automobile against loss by fire. If we construe the clause in question in connection with the remaining portion of that part of the contract dealing with insurance, it is easily seen that, by the terms of the contract, the seller was given the authority to insure the automobile against fire and theft, and if he exercised this authority, the purchaser, Eugene Darrow, agreed to pay the premium, and the seller, upon receipt of any proceeds from any such insurance, could apply such proceeds at his option either to the replacement of the property or to the reduction of the debt. If the intention of the parties had been otherwise, they could have and doubtless would have clearly so stated in comprehensive language when the instrument was executed.

In the case of *Zenor* v. *Hayes* (1907), 228 Ill. 626, 81 N. E. 1144, 13 L. R. A. (N. S.) 909, appellant, as vendor, sold certain real estate to appellee and retained title in himself pending certain payments and assigned the insurance upon the buildings unconditionally to appellee, and, before the legal title was transferred to him, the buildings were destroyed by fire and he collected insurance. Appellant then brought suit against appellee for the proceeds of the insurance money. The court said: "Having an insurable interest in the premises, when appellant assigned the policy to appellee the policy thereafter protected the interest of the appellee, only, in the property. Appellant, as vendor and holder of the legal title, as security for the purchase money, also had an insurable interest in the premises, and might have protected the same by retaining the policy in question or

by taking out other insurance himself or requiring appellee to insure the property for his benefit. Appellant did not see proper to adopt any of these methods of protecting his interest but voluntarily made an unconditional assignment of the insurance to appellee. While it is charged in the bill that appellee is now insolvent, yet that fact, alone, will not justify a court of equity in seizing the proceeds of this policy and applying them on appellant's debt . . . Under the averments in this bill we are of the opinion that appellant has no standing in equity to reach the proceeds of this insurance policy and have them applied on a debt not yet due."

In speaking of the rights of vendors and vendees relevant to insurance, the Supreme Court of California, in the case of *White* v. *Gilman, supra,* said: "The plaintiff was a purchaser (conditional vendee) in possession, and could have insured the house, as owner, for his sole benefit; and if he had done so, in the absence of an agreement that the insurance should be paid to the vendor to the extent of the unpaid purchase money, the vendor could have no claim upon it."

*Cromwell* v. *Brooklyn Fire Ins. Co.* (1870), 44 N. Y. 42, 47, 4 Am. Rep. 641, was a case wherein it was held that a vendor under a contract for the purchase of real estate is entitled to the benefit of insurance taken by a vendee in his own name but under an agreement to insure for the benefit of the vendor, and that, where such a vendee obtains insurance for his own benefit, without any agreement to insure for the benefit of the vendor, the latter can claim no benefit from the insurance. Analogous in principle is the relation of mortgagor and mortgagee, in which it is held that a contract of insurance against fire, as a general rule, is a mere personal contract, and that, in case a mortgagor effects insurance upon the mortgaged premises, *the mortgagee can claim no benefit from it unless he can base his claim upon some*

*agreement,* although the mortgagor may have been personally liable for the debt secured by the mortgage.

The tenant, in the case of *Batts* v. *Sullivan* (1921), 182 N. C. 129, 108 S. E. 511, insured his interest in the undivided crop without the landlord's knowledge. Subsequently, the crop was destroyed by fire and the tenant recovered the insurance. The court held that the tenant was entitled to the full amount of the loss paid by the insurance company.

It was held in the case of *McIntire* v. *Plaisted* (1878), 68 Me. 363, that, in the absence of any special contract therefor, a grantee of land or his assignee who has procured insurance with his own money for his own benefit on buildings located on such land, cannot, after loss, be required to account therefor to a grantor or assignor who has reserved a right to redeem or repurchase as security for the debt.

In the case of *Waverly Sales Co.* v. *Ford* (1917), 194 S. W. Mo. App. 1085, the defendant agreed to sell plaintiff's automobile for a certain sum, and any amount received in excess of such sum was to be divided between plaintiff and defendant. After defendant took possession of the automobile, he insured the same, and subsequently the car was destroyed by fire and defendant collected the insurance far in excess of the agreed price. Plaintiff instituted action to be permitted to share in the insurance money. While plaintiff was permitted to recover because of an agreement to insure, the court held that, in the absence of any agreement to keep the car insured, plaintiff would not have been able to recover. The court said: "Defendant was within his absolute right to insure his interest in the Sterns car in his own name, and to collect the same, and the insurance held by him was a matter solely between the defendant and the insurers and was in no way a concern of the plaintiff. The plaintiff could have protected his interest by

taking out insurance in his own name. It is but elementary to say that he is not entitled, under the original contract, to share in the proceeds of the insurance taken out by the defendant," etc.

In the case of *Phifer & Gossett* v. *Belue* (1916), 108 S. C. 61, 93 S. E. 388, plaintiffs alleged that they sold a piano to M. O. Belue, taking as security for the purchase price a lease note, payable in installments, all of which were due; that it was stipulated in the note that title to the piano should remain in the plaintiffs until the note was paid; that the piano was insured by the purchaser in the name of Flora Belue for $200 and was destroyed by fire; that the defendant insurance company was about to pay the insurance money to the purchaser and Flora Belue; that they have no other security for the debt, and, if the money is paid to the Belues, they will get nothing, as M. O. Belue is not able to respond to a judgment against him. Upon these allegations, plaintiff asked for judgment against the Belues for the balance due on the note and for injunction against payment to them of the insurance money. The Belues argued (1) that no agreement was alleged for insurance of the piano for the benefit of plaintiffs, and, therefore, no equity to the fund, and no ground for injunctive relief; (2) that there is no allegation of insolvency of the Belues. The court held that no sufficient cause of injunction was shown. This was, in effect, a holding that, in the absence of an agreement on the part of the vendee to keep the piano insured for the benefit of the seller, the seller was not entitled to insurance collected by the vendee, even if the debt was due and the vendee was insolvent. See, also, *McCutcheon* v. *Ingraham* (1889), 32 W. Va. 378, 9 S. E. 260, and for a complete discussion as to the rights of a vendor to proceeds of insurance policy in name of vendee, see 13 L. R. A. (N. S.) 909; 37 L. R. A. 150.

In the case before us, appellant, as vendor and holder

of the legal title, as security for the purchase money, also had an insurable interest in the automobile and might have protected the same by taking out insurance in his own name and requiring the purchaser to pay the premium or by requiring appellee to insure the property for his (the vendor's) benefit. Or, after the debt became due, he could have protected himself by repossessing the automobile, which he had a clear right, under the conditional sales contract, to do. He did not see fit to protect himself in any of the above methods. The fact that the debt was due and appellant was entitled, at his option, to repossess the automobile, would not change the rule of law, for the reason that the contract remained in force and the purchaser's insurable interest was not cut off until appellant had exercised such option and repossessed the automobile. Upon the above authorities, we conclude that appellant was not entitled to the insurance money collected by the vendee.

We find no reversible error.

Judgment affirmed.