**IOWA NATIONAL MUTUAL INSURANCE COMPANY OF CEDAR RAPIDS, IOWA, Plaintiff-Appellant,**

v.

**CENTRAL MORTGAGE & INVESTMENT COMPANY OF COLORADO SPRINGS, Defendant-Appellee.**

No. 83CA0643.

Colorado Court of Appeals, Div. I.

Sept. 12, 1985.

Rector, Retherford, Mullen & Johnson, Anthony A. Johnson, Leo W. Rector, Colorado Springs, for plaintiff-appellant.

Donald E. La Mora (on the briefs), Daniel M. Winograd, P.C., Daniel M. Winograd, Colorado Springs, for defendant-appellee.

ENOCH, Chief Judge.

Plaintiff, Iowa National Insurance Company (Iowa), appeals from a judgment denying its motion for injunctive relief against defendant, Central Mortgage and Investment Company (Central). We affirm.

Central held a note secured by a deed of trust executed by the former owner of certain property located in Fort Collins. The trust deed provided that the property's owner would continually maintain hazard insurance, that loss payments under the insurance policy would be made directly to Central, and that renewals of the policy would contain a "loss payable clause," naming Central as payee. The trust deed also stated that the parties' successors would be bound by its convenants.

The property was subsequently purchased by Sharp (insured) who assumed, in writing, the debt owed to Central. The statement of assumption specifically allocated part of insured's monthly payment to Central to the cost of hazard insurance as required under the terms of the trust deed. A few years later, insured changed insurance companies, purchasing a policy from plaintiff Iowa. This policy provided that:

"9. Loss Payable Clause: Loss shall be adjusted with and made payable to the named insured unless another payee is specifically named.

"10. Mortgage Clause: Loss, if any, under this policy, shall be payable to the aforesaid as mortgagee (or trustee) as interest may appear under present or future mortgages upon the property herein described ... and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title of ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy the mortgagee (or trustee) shall, on demand, pay the same."

In addition, a separate "standard mortgage" or "loss payable" clause was attached to the policy, which also explicitly provided that Central would be the payee under the policy if loss or damage occurred.

After the roof of insured's home was damaged in a hailstorm, Iowa issued a damages check payable jointly to Central and insured. When Iowa denied Central's demands that the check be made payable solely to it, Central threatened to refuse to accept any policies issued by Iowa on property subject to Central's mortgages until Iowa agreed to issue damages checks in situations such as these solely to Central.

Iowa based its refusal to meet Central's demand on its contention that Colorado Insurance Department Regulation 78–8 (Reg. 78–8), 3 Code Colo.Reg. 702.6, precludes it from issuing checks payable solely to the holder of a trust deed. That regulation provides:

"No insurer shall attempt to settle any claim made by their direct insured by means of ordering claim checks, drafts or other choices-in-action payable to any person other than their insured(s) without specific written assignment thereof by the insured."

Because of Iowa's refusal to issue checks payable solely to the holder of the deed of trust, Central refused several insurance contracts Iowa issued for properties on which Central held a trust deed. Thereafter, Iowa initiated this action seeking temporary and permanent injunctions, and for money damages. It contended that Central's actions violated § 10–3–1105(1)(b), C.R.S., which provides that no person shall unreasonably disapprove a borrower's insurance policy for the protection of property which secures its credit. Disapproval is defined as unreasonable "if it is not based solely on reasonable standards uniformly applied, relating to the extent of coverage required and the financial soundness and the services of an insurer."

Central replied that it had uniformly disapproved Iowa's policies because of dissatisfaction with Iowa's services, stemming from its refusal to comply with the payment terms of insured's policy, and those like it. The determinative issue before the court was whether Iowa should have made payments in situations like insured's directly to Central, or whether Reg. 78–8 precluded Iowa from so doing, making Central's subsequent refusals to accept Iowa's policies unreasonable and violative of § 10–3–1105.

The court held that under the circumstances here the terms of the standard mortgage clause and paragraph 9 and 10 of insured's policy constituted an irrevocable written assignment while the loan remained outstanding, and required Iowa to pay any loss directly to Central. It further held that Reg. 78–8 had not been violated and that there was, therefore, no reasonable probability that Iowa would succeed on the merits. Thus, the court denied the request for preliminary injunction and, at Iowa's request, made its order final pursuant to C.R.C.P. 54(b).

Iowa contends on appeal that the court erred in holding that Central could refuse

its insurance policies because Reg. 78–8 precludes it from paying losses directly to a mortgagee or trustee. We disagree.

■ Iowa is correct that a "standard mortgage" or "loss payable" clause creates a separate and distinct contract between an insurer and the mortgagee or trustee, *Roylance v. Citizens Savings Bank*, 148 Colo. 423, 366 P.2d 557 (1961), and it is not an assignment by the insured. *Willits v. Camden Fire Insurance Ass'n*, 124 Pa.Super 563, 189 A. 559 (1937). *See also* 10A G. Couch, *Cyclopedia of Insurance Law* § 42:728 (M. Rhoades 2d Rev.Ed. 1982). Nevertheless, while a standard mortgage clause is an independent contract between the insurer and the mortgagee, it is such only for the limited purpose of providing that acts of the mortgagor cannot defeat the mortgagee's right to payment, and thus, it is not an entirely disconnected contract. *Swihart v. Missouri Farmers Mutual Insurance Co.*, 234 Mo.App. 998, 138 S.W.2d 9 (1940); *G. Couch, supra.* It is instead a contract "engrafted upon the contract of insurance contained in the policy itself and is to be rendered certain and understood by reference to the policy itself." The standard mortgage clause thus does not nullify the terms of the original contract, but creates a new contract containing those provisions insurer made with insured personally. *GM Acceptance Corp. v. Western Fire Insurance Co.*, 457 S.W.2d 234 (Mo.App.1970), *citing* 5 A. Appelman, *Insurance Law & Practice* § 3401, 1c. 292 (1970).

■ Those provisions made between the insurer and insured which are of concern here are embodied in the loss payable clause and the mortgage clause contained within paragraphs 9 & 10 of the insurance contract. The mortgage clause in paragraph 10 specifically provides that a loss under the policy shall be paid to the mortgagee. Therefore, the court was correct in finding that there had been a specific written assignment of the right to payment and that, thus, Reg. 78–8 had not been violated.

There also was an effective assignment by insured to Central of the proceeds of the policy under the terms of the deed of trust and the assumption agreement. As stated, the trust deed provided that the property would be insured, and that payments under the policy would be made directly to Central. It further bound the original owner's successors to these conditions.

■ Iowa conceded in its oral argument that, had the insured been the original party to the trust deed, there would have been an assignment of his right. We conclude that the result is no different where the purchaser of the property has assumed the obligation. When the new owner, the insured, assumed the obligation on the note according to the terms of the deed of trust he personally obligated himself to the conditions contained in the note and deed of trust, *see Martynes & Associates v. Devonshire Square Apartments*, 680 P.2d 246 (Colo.App.1984), as if he had been the original grantor of the deed of trust. Because of this assumption, and the trust deed's language binding the property's successors to its terms, insured had assigned his rights to loss payments under the trust deed sufficiently to satisfy the requirements of Reg. 78–8.

■ We therefore agree with the court's denial of the motion for injunctive relief because there was no reasonable probability that Iowa would succeed on the merits of its claims. When a party has failed to establish a probability of success on the merits, a preliminary injunction should be denied. *Rathke v. MacFarlane*, 648 P.2d 648 (Colo.1982). Here, the policies Central disapproved were for properties subject to deeds of trust which Central held, the terms of which were provided by a Veteran's Administration form identical to the one issued insured's predecessor. Thus, Central had the right to have payments made solely to it, and it was therefore not unreasonable under § 10–3–1105, C.R.S., for Central to disapprove Iowa's policies for as long as Iowa maintained its position that it would not make payments solely to Central as the trust deeds required.

Judgment affirmed.

PIERCE and BERMAN, JJ., concur.