INTERNATIONAL INSURANCE COMPANY, Plaintiff-Appellee, v. MEL-ROSE PARK NATIONAL BANK, as Trustee, *et al.*, Defendants-Appellants.

First District (4th Division)   No. 85—2474

Opinion filed June 26, 1986.

Marvin Glassman, of Rabens, Formusa & Glassman, Ltd., of Chicago, for appellants.

James T. Crotty and Timothy J. Nalepka, both of Crotty & Hoyne, of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, the International Insurance Company, brought an action in the circuit court of Cook County against defendants, the

Melrose Park National Bank, as trustee, under trust number 1909, and Lillian Lechtner, the beneficiary under the trust. Plaintiff sought a declaratory judgment determining the amount that it owed defendants under an insurance policy where plaintiff insured defendants' building, where defendants contracted to sell the building, and where a fire damaged the building before defendants and their buyer consummated their agreement and caused them to abandon their contract. The trial court granted plaintiff's motion for summary judgment. Defendants now appeal, contending the trial court erred in granting summary judgment for plaintiff.

We reverse and remand.

The parties agree on the facts. The record shows that defendants owned a building located at 125-27 Broadway Avenue in Melrose Park. On or about April 19, 1982, plaintiff issued an insurance policy to defendants for loss and damage to the building by fire and other risks. The policy had a ceiling of $180,000 and contained the following provision:

> "VIII. VALUATION
> The following bases are established for valuation of property:
> All property at actual cash value at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, *nor in any event for more than the interest of the named insured.*" (Emphasis added.)

On December 2, 1983, defendants entered into an installment agreement for warranty deed in which they agreed to sell the building to a buyer for $65,000. The contract required the buyer to insure defendants' interest in the property against loss by maintaining insurance in an amount at least equal to the unpaid contract price. The contract set the closing date at February 1, 1984, unless mutually agreed otherwise. However, for reasons outside of the record, defendants and the buyer postponed the closing.

On March 17, 1984, a fire occurred that damaged the building. Because of the fire, defendants and the buyer abandoned their contract; there was no closing.

Defendants subsequently submitted to plaintiff a sworn statement in proof of loss. Defendants claimed the policy limit of $180,000 for their building loss. After investigating defendants' claim, plaintiff determined that the total amount due to defendants under the policy was $66,650.01. Plaintiff tendered that amount to defendants, which they refused to accept as the total due to them under the policy, contending that they were entitled to recover

$180,000.

On November 26, 1984, plaintiff brought an action in the trial court seeking a declaratory judgment determining the amount that it owed to defendants under the policy, pursuant to section 2—701 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—701). Plaintiff's complaint contained three counts. Counts I and II each advanced a theory that established $66,650.01 as the proper amount of defendant's recovery under the policy. In count III, plaintiff claimed that even if the amount of defendants' loss were greater than $66,650.01, defendants could not recover to an extent greater than their actual insurable interest in the property at the time of their loss. Plaintiff further claimed that since defendants sold the property pursuant to the installment agreement, their actual interest in the property was the unpaid contract price of $65,000.

Defendants attached a counterclaim to its answer, in which they sought $180,000 for the loss of the building, plus attorney fees, prejudgment interest, and a penalty.

The record shows that both plaintiff and defendants moved for summary judgment on count III. Defendants asserted only that the contract sale price was not a limit on their recovery under the insurance policy, while plaintiff asserted that it was. Defendants sought a trial on counts I and II of the complaint and on their counterclaim. The trial court held that Illinois law limited defendants' recovery under the policy to their insurable interest in the property and that their interest in the property was the unpaid contract price of $65,000. On May 9, 1985, the trial court granted summary judgment for plaintiff, and on July 29, 1985, the court denied defendants' motion for reconsideration. Defendants appeal.

■ A trial court may properly enter summary judgment where the record presents purely questions of law. (*People ex rel. Rappaport v. Drazek* (1975), 30 Ill. App. 3d 310, 313, 332 N.E.2d 532, 535.) In the instant case, all parties agreed on the material facts before the trial court and continue to do so. The only issue before the trial court was the legal effect of the contract between defendants and their buyer on the insurance policy. Thus, the trial court was faced with a pure question of law. Consequently, summary judgment was proper. 30 Ill. App. 3d 310, 313-14, 332 N.E.2d 532.

I

Relying on *First National Bank v. Boston Insurance Co.* (1959), 17 Ill. 2d 147, 160 N.E.2d 802, defendants claim that Illinois law does not limit their recovery under the insurance policy to the un-

paid contract price of $65,000. In *First National Bank*, plaintiff bank held title to property as trustee under a land trust. Defendant insurance companies issued to plaintiff fire insurance policies having a maximum total coverage of $46,750. Each of the policies indemnified plaintiff for the actual cash value of the property at the time of the loss, but not exceeding the cost of repair or replacement, "nor in any event for more than the interest of the insured." Plaintiff subsequently entered into a contract to sell the property for $19,000; plaintiff received $3,000 from the buyer and would receive the balance at a scheduled closing. The contract provided, *inter alia*, that if fire or some other risk destroyed or materially damaged the property before delivery of the deed, then the buyer would have the option to abandon the contract, treating it as null and void. 17 Ill. 2d 147, 148, 160 N.E.2d 802, 803.

Prior to the closing, fire destroyed the building. Defendants rejected plaintiff's claim for the full amount of the insurance. Defendants claimed that the "interest of the insured" did not exceed $16,000, the unpaid price under the contract. 17 Ill. 2d 147, 149-50, 160 N.E.2d 802.

Our supreme court concluded that the contract price did not limit plaintiff's recovery under the policies. The court first acknowledged the doctrine of equitable conversion—that when two parties enter into an enforceable contract for the sale of realty, equity regards the buyer as the owner of the land and regards the seller as the owner of the purchase money, which is personalty and not realty. The court then noted that the doctrine acts upon only the parties to a contract and has no effect on the rights of others. 17 Ill. 2d 147, 150-51, 160 N.E.2d 802.

Thus, the court reasoned that between plaintiff and its buyer the value of plaintiff's interest under the contract at the time of the fire was $16,000. However, defendant, a stranger to the contract, could not view the contract price as an absolute measure of the value of the property. 17 Ill. 2d 147, 151, 160 N.E.2d 802.

Defendants in the instant case argue that plaintiff, like the insurer in *First National Bank*, is a stranger to the contract between them and their buyer. Thus, plaintiff cannot use the contract to assign a value to the building.

Plaintiff does not dispute the principles contained in *First National Bank*, but rather, distinguishes the contract in that case from the contract in the case at bar. Plaintiff notes that the seller in *First National Bank* would have received the full balance of the purchase price at the time of closing in exchange for giving its en-

tire interest in the property to the buyers. In the instant case, however, defendants sold the building pursuant to an installment agreement.

Plaintiff correctly notes the legal relationship between an installment agreement to sell land and property insurance. An insurable interest at the time of the loss is essential to the validity of an insurance policy. A person has an insurable interest in property whenever he or she would profit or gain some advantage by its continued existence or suffer loss or disadvantage by its destruction. It is enough if one claiming an insurable interest holds such a relation to the property that its destruction by the peril insured against involves direct pecuniary loss to him or her. *Hawkeye-Security Insurance Co. v. Reeg* (1984), 128 Ill. App. 3d 352, 354-55, 470 N.E.2d 1103, 1105.

From these general principles, Illinois courts have concluded that where a buyer under an installment contract for the sale of realty agrees to insure the property against loss for the benefit of the seller, the seller is entitled to fire-loss-insurance proceeds to the extent of the balance due on the contract price. *Kindred v. Boalbey* (1979), 73 Ill. App. 3d 37, 40, 391 N.E.2d 236, 239.

The interest of a seller under an installment agreement is analogous to that of a mortgagee. (*White v. United States Fidelity & Guaranty Co.* (1974), 21 Ill. App. 3d 588, 594-95, 316 N.E.2d 131, 136, quoting *Grange Mill Co. v. Western Assurance Co.* (1886), 118 Ill. 396, 399-400, 9 N.E. 274, 275.) The mortgagee's insurable interest is *prima facie* the value mortgaged, and extends only to the amount of the debt, not exceeding the value of the mortgaged property. Unlike the mortgagor, whose insurable interest covers the full value of the mortgaged premises even though the mortgage debt is equivalent to the full value of the property, the mortgagee relies on the property only as security for the debt because, in insuring, he is insuring not the real estate but his interest or lien thereon. The risk insured against is an impairment of the mortgaged property that adversely affects the mortgagee's ability to resort to the property as a source of repayment. *Great-West Life Assurance Co. v. General Accident Fire & Life Assurance Corp., Ltd.* (1983), 116 Ill. App. 3d 921, 927, 452 N.E.2d 550, 554.

Plaintiff, therefore, argues that defendants can recover no more than $65,000, which was the unpaid amount due to them under the installment agreement.

Defendants do not dispute the principles upon which plaintiff relies. Rather, defendants distinguish those cases from the instant

case in one respect. Defendants note that in the above cases the buyers had received either title or possession or both before the destruction of the property. In the case at bar, the buyer had received neither title nor possession. There was no closing; the parties never consummated their agreement prior to the fire. Defendants argue that although they entered into a valid installment agreement for the sale of their building, the agreement was not in force.

In response, plaintiff contends that the consummation of the sale of realty, *i.e.*, the closing, is ceremonial and has no legal significance. Plaintiff argues that at the time of the fire the installment agreement was valid and binding.

One definition of a contract is an agreement between competent parties, upon a legally sufficient consideration, to do or not to do a particular thing. An offer, acceptance and consideration are the necessary ingredients of a contract. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 329, 371 N.E.2d 634, 639.) The elements of a contract for the sale of land are substantially the same as those of contracts generally. Such acts as closing of title, payment of the purchase price and delivery of the instruments of conveyance are not acts essential to the creation of a land contract, but rather are acts of performance relating to the execution of the contract. 91 C.J.S. Vendor & Purchaser sec. 20 (1955).

The Uniform Vendor and Purchaser Risk Act (Ill. Rev. Stat. 1983, ch. 29, par. 8.1 *et seq.*) (hereinafter the Act), however, places great significance on the consummation of real estate contracts. The Act provides, in pertinent part:

"8.1 Risk of loss

Sec. 1. Any contract hereafter made for the purchase and sale of real property in this State shall be interpreted as including an agreement that the parties shall have the following rights and duties, unless the contract expressly provides otherwise:

(a) If, when neither the legal title nor the possession of the subject matter of the contract has been transferred, all or a material part thereof is destroyed without fault of the purchaser or is taken by eminent domain, the vendor cannot enforce the contract, and the purchaser is entitled to recover any portion of the price that he has paid[.]" (Ill. Rev. Stat. 1983, ch. 29, par. 8.1(a).)

Since defendants had not transferred title or possession to their buyer, *i.e.*, consummated or closed their transaction, the Act entitled the parties to abandon their contract.

Plaintiff claims that the Act is inapplicable to the instant case. The Act states that it is inapplicable to a contract that expressly provides terms other than its own. Plaintiff contends the Act is inapplicable to the contract between defendants and their buyer because the contract provided that the buyer would maintain insurance for the building in defendants' names.

■ Plaintiff's attempt to remove the contract from the protection of the Act fails. Nowhere in the contract does it state that if the building is destroyed or taken by eminent domain the buyer cannot recover any money that he paid. The Act clearly states that this type of express statement in a contract is necessary to remove the contract from its protection. We hold that the Uniform Vendor and Purchaser Risk Act applied to the case at bar and that the Act entitled defendants and their buyer to abandon their contract.

Since defendants legally abandoned their contract, plaintiff, a stranger to the contract, cannot use it to assign a value to the building. Like the insurers in *First National Bank*, plaintiff attempts to transplant the doctrine of equitable conversion into an area where it does not belong. (*First National Bank v. Boston Insurance Co.* (1959), 17 Ill. 2d 147, 150, 160 N.E.2d 802, 804.) We hold that the contract sale price was not a limit on defendants' recovery under the insurance policy. Thus, the trial court erred in denying summary judgment for defendants and in granting summary judgment for plaintiff on count III of the complaint.

For the foregoing reasons, the order of the circuit court of Cook County granting summary judgment for plaintiff on count III of the complaint is reversed, summary judgment in favor of defendants is granted, and the cause is remanded to the trial court for a trial on counts I and II of plaintiff's complaint and on defendants' counterclaim.

Reversed, with judgment here, and remanded.

LINN, P.J., and JIGANTI, J., concur.