PROPERTY OWNERS INSURANCE COMPANY and Auto–Owners Insurance Company, Defendants–Appellants,

v.

Joseph T. HACK and Jean K. Hack, Plaintiffs–Appellees,

D. Rex Lacey and Betty J. Lacey, Non–Participants On Appeal.

No. 73A01–9004–CV–142.

Court of Appeals of Indiana, First District.

Sept. 13, 1990.

Opinion on Rehearing Nov. 26, 1990.

580(8)

Donna H. Fisher, Jennings & Maas, Carmel, for defendants-appellants.

Robert L. Dalmbert, Dalmbert, Marshall & Perkins, Columbus, for plaintiffs-appellees.

BAKER, Judge.

This case comes before us on appeal from Judge Charles O'Connor's grant of partial summary judgment to plaintiff-appellees Joseph and Jean Hack, husband and wife (the Hacks), in their action to recover sums under a policy of fire insurance issued by defendant-appellant Property Owners Insurance Company (Property Owners).[1] We affirm.

The case is one of first impression, and calls on us to rule on the nature and extent of a real estate installment contract seller's interest in fire insurance proceeds. The specific issue before us is whether a contract seller that requests insurance from an insurance company is entitled to recover the value of its interests under the contract in the event of a loss, notwithstanding the insurer's payment of the seller's mortgage to the seller's mortgagee.

## FACTS

The Hacks owned a restaurant and tavern known as The Lounge in Edinburg, Indiana. Irwin Union Bank and Trust Company held the Hacks' mortgage on the property. On October 1, 1985, the Hacks sold the business, its equipment and fixtures, the building in which it was housed, and the land on which it was situated to Rex Lacey (a defendant in this action not party to this appeal) and Carl and Betty Whittington. They also transferred a retail liquor permit to Rex Lacey for use at The Lounge. The method of sale was installment land contract, with a purchase price of $300,000. The Whittingtons subsequently assigned their interest to Betty Lacey, who is also a defendant not party to this appeal.

The contract required the buyers to maintain fire, casualty, and extended insurance coverage on the property for the benefit of the sellers. In June of 1987, the insurance carrier notified Mr. Hack that the Laceys had allowed the required coverage to lapse for failure to pay premiums. Mr. Hack then contacted Victor McGill, an insurance broker for Property Owners, and explained the situation. He told McGill there were three interested parties; the bank as mortgage holder, the Hacks as sellers, and the Laceys as buyers. McGill and Property Owners then prepared a policy which listed the Laceys as the insureds. The policy also contained an "additional interest schedule" wherein the Hacks were listed as contract holders and Irwin Union Bank was listed as mortgagee under a standard mortgage clause. Recovery under the standard mortgage clause was limited to building losses only, but with the exception of this exclusion, the policy covered personal property as well as real property.

On May 8, 1988, The Lounge was destroyed by fire. Rex Lacey was later convicted of arson for the fire. Property Owners paid $186,000 to Irwin Union Bank in discharge of the Hacks' mortgage, but refused to make any payments to the Hacks.

Judge O'Connor granted the Hacks' motion for partial summary judgment, ordering Property Owners to pay the Hacks the lesser of the amount due under the contract or the policy limits. Property Owners now appeals.

## DISCUSSION AND DECISION

### I

Property Owners argues its payment of the mortgage balance of $186,000 to Irwin

---

**1.** Another defendant in this action, Auto–Owners Insurance Company, has appealed with Property Owners. The Hacks claim Auto–Owners may be jointly liable with Property Owners by virtue of a possible contractual relationship between Auto–Owners and Property Owners, but the existence of this relationship has yet to be resolved at trial.

Union Bank discharges its obligations to the Hacks. In essence, Property Owners makes two rather inconsistent arguments. First, Property Owners argues that the Hacks are simply nominees of the named insureds, the Laceys, and as such, have no greater right to recovery than do the Laceys.[2] Its second and more vigorous argument is that the Hacks are analogous to a mortgagee, and are entitled to recover jointly with their mortgagee only the amount of the outstanding mortgage debt. In either event, Property Owners urges us to find the Hacks are not entitled to any further recovery. The Hacks counter that the insurance, which the Laceys were required to maintain under the installment contract, was purchased to protect their interests under the contract, which included both the real property and the personal property conveyed to the Laceys.

■ The dispute arises because the policy at issue is ambiguous. An insurance contract is ambiguous if "it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning...." *Landis v. American Interinsurance Exchange* (1989), Ind.App., 542 N.E.2d 1351, 1353, *trans. denied.* Insurance contracts found to be ambiguous are strictly construed against the insurer. *Meridian Mut. Ins. Co. v. Cox* (1989), Ind.App., 541 N.E.2d 959, *trans. denied.* Here, while the contract contains specific provisions for recovery by the mortgagee under the standard mortgage clause, the mortgage clause does not include contract sellers or describe their rights in any way. *Record* at 32. Similarly, the additional interest schedule merely lists the Hacks as contract holders; it says nothing about the extent of their coverage. *Record* at 37. In such a case, when the contract lists but does not define the extent of a given interest, reasonably intelligent persons could easily differ. Indeed, as we have already noted, Property Owners itself appears unsure how to view the Hacks' interests. In its original brief, Property Owners states the Hacks have been compensated as mortgagees under the standard mortgage clause. *Appellant's Brief* at 8. In its reply brief, however, Property

Owners argues the Hacks should be treated as nominees of the Laceys. *Appellant's Reply Brief* at 10. If an insurer interprets its own policy language in more than one way, that language is ambiguous by definition, and we will construe that language strictly against the insurer.

Because the question of the extent of the Hacks' interest under the ambiguous language of the policy is a novel issue juxtaposed with several well settled rules of law, we begin with a review of the law applicable to the distribution of insurance proceeds.

## II

■ To be entitled to insurance proceeds, a recipient must have an insurable interest in the property insured. *Erie–Haven, Inc. v. Tippmann Refrigeration Const.* (1985), Ind.App., 486 N.E.2d 646. An insurable interest in property exists if the possessor of the interest benefits from the property's existence or would suffer a loss from its destruction. *United Farm Bureau Mut. Ins. Co. v. Blanton* (1983), Ind.App., 457 N.E.2d 609; *International Ins. Co. v. Melrose Park Nat'l. Bank* (1986), 145 Ill.App.3d 286, 99 Ill.Dec. 462, 495 N.E.2d 1197. It is possible for several parties to have an insurable interest in real estate, and their interests need not arise from ownership. *See Dewitt v. American Family Mut. Ins. Co.* (1984), Mo., 667 S.W.2d 700, 707. Both mortgagees and mortgagors have insurable interests in real estate, *Tech Land Development v. South Carolina Ins.* (1982), 57 N.C.App. 566, 291 S.E.2d 821, *review denied,* 306 N.C. 563, 294 S.E.2d 228, as do installment contract sellers, *Meade v. North Country Co-op. Ins. Co.* (1986), 120 A.D.2d 834, 501 N.Y. S.2d 944 and installment contract buyers. *See West Bend Mut. Ins. Co. v. Salemi* (1987), 158 Ill.App.3d 241, 110 Ill.Dec. 608, 511 N.E.2d 785, *appeal denied,* 116 Ill.2d 577, 113 Ill.Dec. 320, 515 N.E.2d 129.

■ A seller's insurable interest alone, however, does not guarantee entitlement to the proceeds of a buyer's insurance. This is so because, absent a buyer's or mortga-

2. To raise a successful arson defense against Rex Lacey, Property Owners must prove by a preponderance of the evidence that Lacey willfully burned The Lounge, and Property Owners may make this defense with circumstantial evidence. *Dean v. Insurance Co. of North America* (1983), Ind.App., 453 N.E.2d 1187. If Betty La-

cey was not involved in the arson, her rights to recovery are not barred unless the policy specifically excluded coverage for all insureds in the event any insured deliberately caused a loss. *Carroll v. Statesman Ins. Co.* (1987), Ind., 509 N.E.2d 825.

gor's covenant to insure for the benefit of the seller or mortgagee, the seller/mortgagee has no right to the proceeds of the buyer/mortgagor's insurance, even though the buyer/mortgagor remains liable on the debt.[3] *Lakeshore Bank & Trust Co. v. United Farm Bureau Mut. Ins. Co.* (1985), Ind.App., 474 N.E.2d 1024; *Bodwitch v. Allen* (1983), 91 A.D.2d 1177, 459 N.Y.S.2d 148. Entitlement to proceeds arises in one of three ways.

■ First, the seller's name may appear on the policy under one or more of several designations. As a loss payee, the seller has no contract with the insurer, its rights are derivative of the named insured's rights, and it is subject to the same defenses as is the named insured. *See Posner v. Firemen's Insurance Co.* (1964), 49 Ill.App.2d 209, 199 N.E.2d 44; *Fields v. Western Millers Mutual Fire Insurance Co.* (1943), 290 N.Y. 209, 48 N.E.2d 489; *Cary Mfg. Co. v. Acme Brass & Metal Works* (1934), 215 Wis. 585, 254 N.W. 513; *Grosvenor v. Atlantic Fire Ins. Co.* (1858), 17 N.Y. 391. Accordingly, if the named insured commits arson, thereby excluding himself from coverage, any loss payees are also denied coverage. Conversely, if the mortgagee is listed under a New York, or standard, or union, mortgage clause, it is universally held that the mortgagee has entered into a separate contract with the insurer and is entitled to payment regardless of the mortgagor's acts or omissions. *Neises v. Solomon State Bank* (1985), 236 Kan. 767, 696 P.2d 372; *Iowa Nat. Mut. Ins. Co. v. Central Mortgage & Inv. Co.* (1985), Colo.App., 708 P.2d 480; *Hartford Fire Ins. Co. v. Merrimack Mut. Fire Ins. Co.* (1983), Me., 457 A.2d 410; *Cole v. Michigan Mut. Ins. Co.* (1982), 116 Mich.App. 51, 321 N.W.2d 839; *Fields, supra.* Sellers may also obtain protection under a contract of sale clause. *See West Bend Mut. Ins. Co., supra; Root v. Republic Ins. Co.* (1978), 82 Mich.App. 446, 266 N.W.2d 842.

■ Second, if a buyer covenants to keep the property insured for the seller's benefit and takes out insurance without assigning it or making it payable to the seller, the covenant creates an equitable lien in the seller's favor upon the proceeds held by the buyer after a loss. *See Down-*

*ing v. Stiles* (1981), Wyo., 635 P.2d 808, 816, *citing* 5 Couch on Insurance 2d, Section 29:103; *Nordyke & Marmon Co. v. Gery* (1887), 112 Ind. 535, 13 N.E. 683.

■ Third, if the insurer has knowledge of a buyer's covenant to insure for the seller's benefit, the insurer is under a duty to disburse policy proceeds as though the seller's interest appeared in the policy, even if the buyer breached its covenant. *Lakeshore Bank & Trust Co., supra.*

### III

■ We come now to the heart of the dispute, which revolves around the parties' interpretations of three well settled rules of law. First, contract sellers are analogous to mortgagees for purposes of recovery of insurance proceeds. *See Hoverstock v. Darrow* (1934), 94 Ind.App. 83, 179 N.E. 790; *Fields, supra; Meade, supra; Cole, supra.* Second, a mortgagee's interest in insurance proceeds is limited to the extent of the debt secured by the property. *See First Federal Savings & Loan Ass'n. of Gary v. Stone* (1984), Ind.App., 467 N.E.2d 1226, *trans. denied; Tech Land Development, supra; Great–West Life Assurance Co. v. General Accident Fire and Life Assurance Corp., Ltd.* (1983), 116 Ill.App.3d 921, 72 Ill.Dec. 297, 452 N.E.2d 550. Third, contract sellers are entitled to recover proceeds equal to the amount due on the contract, subject to the policy's limits of liability. *See West Bend Mut. Ins. Co., supra,* and cases cited therein.

■ In a transaction with only two parties, a seller and a buyer, the parties stand in the same position as mortgagee and mortgagor, and there is no distinction between the second and third rules: regardless of which rule is looked to for guidance, the seller is entitled to the amount it is owed. In the present case, however, there are three parties; seller, seller's mortgagee, and buyer. In such a situation, if the seller is simply analogous to the mortgagee, then payment to the mortgagee concludes the insurer's obligation to the seller. If, however, the seller is entitled to recover to the extent of its interests under the contract, the insurer is liable to the seller

---

**3.** It is well settled that the installment contract seller-buyer relationship is analogous to the mortgagee-mortgagor relationship, and we use the terms interchangeably except as otherwise noted in Sections III and IV, *infra. See Skendzel v. Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641, *cert. denied,* 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476.

for the difference, if any, between the amount due on the contract and the amount paid to the mortgagee to discharge the seller's mortgage.

While this is not a frequently litigated issue, at least one state follows this latter interpretation. *White v. United States Fidelity and Guaranty Co.* (1974), 21 Ill. App.3d 588, 316 N.E.2d 131. To adopt Property Owners' position would be to adhere slavishly to the form of the rule that contract sellers are analogous to mortgagees while ignoring the purpose of that rule, which is to provide contract sellers with protection of their interests in insurance proceeds and the interests those proceeds represent. Moreover, equity and common business sense dictate that when three separate parties insure their separate and discrete interests, the insurer should not be allowed to avoid liability merely by shielding itself with an inapplicable rule of law. *See, e.g., Cary Mfg. Co., supra* (parties contracted for the priority of disbursement of insurance proceeds: first to seller's mortgagee; second to seller; third to buyer). We therefore hold that an insurer's payment of proceeds to a contract seller's mortgagee does not automatically terminate the insurer's liability to the seller for the amount due under the contract in excess of the mortgage and within the applicable policy limits of liability.

The seller, of course, must comply with all necessary requirements to be entitled to coverage, and we turn now to the case at hand to determine whether the Hacks' actions were sufficient to render Property Owners liable.

## IV

■ Property Owners brings this appeal from a grant of partial summary judgment. Such a judgment is interlocutory and not appealable unless the trial court finds, as it did here, that there is no just reason for delay and directs judgment on less than all the issues. Ind.Trial Rule 56(C). *Winona Memorial Foundation v. Lomax* (1984), Ind.App., 465 N.E.2d 731. On review, we use the same standards as the trial court, and must reverse if an unresolved issue of material fact exists in

the record or if the trial court applied the law to the undisputed facts incorrectly. *Id.* The party moving for summary judgment bears the burden of proving that no genuine issue of material fact exists. *ITT Commercial Finance Corp. v. Union Bank & Trust Co.* (1988), Ind.App., 528 N.E.2d 1149. After the moving party has made this showing, however, the burden shifts to the nonmoving party, who may not rest on his pleadings, but must set forth specific facts indicating the existence of a material fact. *Id.*

■ Here, Mr. Hack's unrefuted affidavit shows he fully disclosed to McGill the nature of the land contract and the existence of the separate interests of the bank as mortgagee, his wife and himself as sellers, and the Laceys as buyers. Mr. Hack told McGill that the property was uninsured and that he, Mr. Hack, had to be on the policy to be protected. His affidavit attesting the truth of these facts was a sufficient showing of the absence of any genuine issue of material fact to justify the grant of partial summary judgment absent a refutation of the facts by Property Owners.

> Certainly enough was revealed to defendant [insurer] upon [request for] the policy to place some burden of further inquiry upon it if there were any possible material points of confusion as to the status of the parties, the nature of their interests sought to have been insured or the type of coverage required under the circumstances of the known contractual relationships. Equity must place upon the insurer either the responsibility for providing a contract fairly meeting the standard and common needs of the applicant where these have been reasonably disclosed or the duty of rejecting the proffered transaction.

*Richardson v. Providence Washington Ins. Co.* (1963), 38 Misc.2d 593, 600, 237 N.Y.S.2d 893, 900-01. Mr. Hack is not a lawyer, nor is he an insurance specialist; he and his wife are business people who operated a restaurant and bar.[4] He explained to an insurance broker his needs, and a policy was issued bearing his name as contract holder.

---

4. Property Owners argues that, at the very least, it should not have to compensate the Hacks for the value of the retail liquor permit because, as an intangible, the permit was not destroyed by the fire. This argument is without merit because the Hacks have no rights in the permit.

Title 7.1 of the Indiana Code regulates alcoholic beverages in this state. IND.CODE 7.1-3-1-2 provides that "[a] permittee shall have no property right in a wholesaler's, retailer's, or dealer's permit of any type."

In a similar situation, a case wherein an insurer attempted to avoid liability to a plaintiff untutored in the niceties of insurance law on the grounds that the nature of the plaintiff's interest was not stated properly in the policy, the Indiana Supreme Court held the fact that the insurance "agent did not ascertain the true situation is [the insurer's] responsibility." *Aetna Ins. Co. of the Midwest v. Rodriguez* (1988), Ind., 517 N.E.2d 386, 388. In another case, Judge Cardozo, speaking for the New York Court of Appeals, stated "[o]ur guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract. It is his intention, expressed or fairly to be inferred, that counts." *Bird v. St. Paul Fire & Marine Ins.* (1920), 224 N.Y. 47, 51, 120 N.E. 86, 87.

Here, the Hacks' reasonable expectation was that their interests would be protected, and it was Property Owners' responsibility either to see that those interests were protected or to refuse to write the policy. In such a situation, to place a seller in the shoes of its mortgagee would work an injustice and deny the seller the benefit of its contract and of the insurance purchased to secure that contract.[5]

Judge O'Connor's judgment is affirmed, and the cause is remanded for further proceedings consistent with his order and this opinion.[6]

### ON PETITION FOR REHEARING

Property Owners petitions for rehearing on several grounds. We grant the petition to clarify our earlier decision in *Property Owners Ins. Co. v. Hack* (1990), Ind.App., 559 N.E.2d 396.

## I

■ Preliminarily, Property Owners argues Mr. Hack was not a party to the insurance contract, and that, accordingly, we cannot enforce his reasonable expectations. Property Owners is mistaken because persons other than the named insured, including beneficiaries, are entitled to have their reasonable expectations enforced. *See American Economy Ins. Co. v. Liggett* (1981), Ind.App., 426 N.E.2d 136, 141, *citing* Keeton, *Insurance Law* (1971), § 6.3(a).

## II

The sum of Property Owners' argument is that the insurance contract's terms render the Hacks mere nominees of the named insureds, the Laceys. Following this argument to its logical conclusion, Property Owners asserts its payment of $186,000 to the Hacks and their mortgagee was a gesture of settlement because the question of a contract seller's rights under a standard mortgage clause is not resolved in Indiana. This view is incorrect for two reasons.

First, the rule in this state that contract sellers are analogous to mortgagees for purposes of disbursement of insurance proceeds was established over half a century ago in *Hoverstock v. Darrow* (1934), 94 Ind.App. 83, 179 N.E. 790. Second, and more importantly, this case does not revolve around a contract seller's rights under a standard mortgage clause, but rather a contract seller's rights independent of a standard mortgage clause.

■ Property Owners concedes contract sellers can have rights independent of a standard mortgage clause through a contract of sale clause. *See West Bend Mutual Ins. Co. v. Salemi* (1987), 158 Ill.App.3d 241, 110 Ill.Dec. 608, 511 N.E.2d 785, *ap-*

---

5. The crux of Property Owners' argument analogizing the Hacks to a mortgagee is that the standard mortgage clause in the policy at hand limits recovery to losses to buildings only, while the amount due the Hacks under the contract includes personalty. As we have already held, merely to place the Hacks in the shoes of their mortgagee is inappropriate. The Hacks' interests are not the same as those of the mortgagee bank, they did not request coverage under the standard mortgage clause, and they are not limited by the terms of the standard mortgage clause. Moreover, in this case, in which the seller fully disclosed the nature of the transaction to the insurer, to limit recovery to building

losses only would be "repugnant to the purposes of the policy as a whole ..." *J.B. Kramer Grocery Co., Inc. v. Glens Falls Ins. Co.* (8th Cir. 1974), 497 F.2d 709, 712.

This is not to say, however, that a contract seller's covered losses may never be limited to building losses only. In *Root v. Republic Ins. Co., supra*, the contract of sale clause upon which the seller based its claim specifically incorporated the policy's standard mortgage clause, which limited the insurer's liability to building losses only.

6. We express no opinion regarding any possible subrogation rights Property Owners may have.

*peal denied,* 116 Ill.2d 577, 113 Ill.Dec. 320, 515 N.E.2d 129. Such a clause specifically insures the benefit of the seller's bargain, even if the amount due under the contract of sale is greater than the cash value of the damaged or destroyed property. In the absence of a contract of sale clause, an insurer insures only the value of the lost property, not the benefit of the seller's bargain. *See* Keeton and Widiss, *Insurance Law* § 3.9(a); 15 *Couch on Insurance* § 54.124 for customary valuation formulas.

■ Because there was no contract of sale clause attached to the contract at issue here, Property Owners argues the Hacks cannot recover the benefit of their bargain. This argument begs the question: there was no contract of sale clause because Property Owners did not attach one to the contract. As we stated in our earlier opinion, Mr. Hacks' affidavit, which Property Owners never refuted, shows Mr. Hack requested the elements necessary for a contract of sale clause. We repeat also that the Hacks are neither lawyers nor insurance specialists; Mr. Hacks' reasonable expectations were worthy of enforcement, and Property Owners cannot avoid liability merely because the Hacks lacked the expertise to ask specifically for a contract of sale clause.

### III

■ In our previous opinion, we stated that "[t]he dispute arises because the policy at issue is ambiguous." 559 N.E.2d at 339. Property Owners correctly points out that the resolution of ambiguities in a written contract generally is a question for the trier of fact. *See Seibert v. Mock* (1987), Ind.App., 510 N.E.2d 1373. When the ambiguity stems not from extrinsic facts, however, but from the language of the contract itself, resolution of the ambiguity is a question of law for the trial court. *Kordick v. Merchant's National Bank and Trust Co.* (1986), Ind.App., 496 N.E.2d 119.

Here, the ambiguity stems from the fact that the policy merely lists the Hacks as contract holders, and does not define the scope or extent of their coverage. Property Owners failed to supply a contract of sale clause, and this failure to "ascertain the true situation is [the insurer's] responsibility." 559 N.E.2d at 402. (citation omitted). Mr. Hacks' affidavit showed an absence of any genuine issue of material fact regarding the coverage requested. This showing shifted the burden to Property Owners to demonstrate a genuine issue necessitating a trial. *See Kahf v. Charleston South Apartments* (1984), Ind.App., 461 N.E.2d 723, *trans. denied; McCullough v. Allen* (1983), Ind.App., 449 N.E.2d 1168. Property Owners did not attempt to meet the burden, and accordingly, the grant of partial summary judgment was proper.

### IV

Our previous decision remains unaltered, the judgment of the trial court is affirmed, and the cause is remanded to the trial court for further proceedings consistent with this opinion and our earlier opinion.

ROBERTSON and CONOVER, JJ., concur.