Present:  Hassell, C.J., Lacy, Keenan, Kinser, Lemons, and
Agee, JJ., and Russell, S.J.

NATIONAL BANK OF FREDERICKSBURG        OPINION BY
                                  SENIOR JUSTICE CHARLES S. RUSSELL

v.  Record No. 040418              January 14, 2005

VIRGINIA FARM BUREAU FIRE AND CASUALTY INSURANCE COMPANY


            FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
                      John W. Scott, Jr., Judge

     This appeal presents the question whether an insurance

company, by giving a notice of renewal of an automobile policy

containing a "union mortgage clause" to a lienholder, provided

a separate and independent insurance of the lienholder's

interest that would survive the lapse of the underlying policy

caused by the insured's failure to pay the renewal premium.

     Eric Adams and his wife, Carrie Lynn Adams, (the Adams)

owned a 1997 Chevrolet Tahoe that they insured with Virginia

Farm Bureau Fire and Casualty Company (the Insurer).  The car

was subject to a lien securing a loan made to the Adams by the

National Bank of Fredericksburg (the Bank).  The terms of the

loan required the Adams to maintain insurance protecting the

Bank's interest in the car.  The Insurer issued a policy

covering the car effective July 5, 2001 and expiring January

5, 2002.  The policy contained a "loss payable" clause

protecting the Bank's interest.

On December 6, 2001, while the policy was still in effect, the Insurer sent the Bank a document captioned "Automobile Renewal Declaration **** Effective 01/05/02." The renewal declaration stated that the new policy period was to be from January 5, 2002 until July 5, 2002. It also specified the coverage to be included in the renewal policy, which was identical to that provided by the original policy, and referred to the original policy number. The renewal declaration contained a loss payable clause, similar to that contained in the original policy, of a kind commonly described as a "union mortgage clause." The clause stated, in pertinent part, that "this insurance as to the interest of the . . . Lienholder shall not be invalidated by any act or neglect of the . . . Owner of the within described automobile . . . ." The clause also provided that "in case the . . . Owner . . . shall neglect to pay any premium due under such policy the Lienholder shall, on demand, pay the same."

At approximately the same time it sent the renewal declaration to the Bank, the Insurer sent the Adams a "renewal notice" offering to renew the policy but warning them that the policy would "expire at 12:01 A.M. on 01/05/02 unless the minimum payment is made by the due date." On January 9, 2002, the Insurer sent the Adams a "Final Notice" stating that payment of the premium had been due January 5, that a minimum

2

payment of $422.03 was "due now" and that "this is the last notice you will receive."  The Adams made no attempt to pay any part of the renewal premium until after January 19, 2002. The Insurer did not inform the Bank, until after that date, that the premium was unpaid and never demanded that the bank pay it.

The Chevrolet Tahoe was damaged in a single-car collision on January 19, 2002 while driven by Carrie Lynn Adams and was classified by the Bank as a total loss, in that the cost of repair or replacement exceeded the balance due on the loan. On January 23, 2002, the Insurer sent a notice to the Bank stating that the Bank's coverage as a lienholder had expired on January 5, 2002.  The Adams made a prompt claim to the Insurer for the loss, but the Insurer denied it on the ground that the policy had not been in force on January 19, when the accident occurred.

The Bank brought this action by a warrant in debt in the general district court, seeking to recover from the Insurer $14,816.43, the unpaid balance due on its loan to the Adams. The Insurer removed the case to the circuit court and the parties submitted the case on a written stipulation of facts, the relevant documents, additional evidence heard *ore tenus* and arguments of counsel.  The court, in a written opinion, held that the policy had not been canceled by the Insurer but

3

had simply expired by its own terms when the Adams failed to accept the Insurer's offer to renew it upon the Adams' payment of the premium. Because there was no policy in force on the date of the loss, the trial court reasoned, neither the Adams nor the Bank had any contractual rights against the Insurer. The trial court entered final judgment for the Insurer and we awarded the Bank this appeal.

The Bank contends that the renewal declaration sent to it by the Insurer created "separate and independent insurance" of the Bank's interest in the car as a lienholder and that such insurance was a contractual obligation of the Insurer. The Bank argues that the contract of insurance thus created was supported by consideration in two respects: (a) by the Insurer's right to demand payment of the premium by the Bank in the event of non-payment by the insured, and (b) by the Bank's forbearance in exercising its right to foreclose in the event of the insured's breach of the covenant to keep the car covered by insurance. The notice sent by the Insurer to the Bank after the accident, stating that the Bank's coverage had expired on January 5, 2002, was, the Bank contends, a unilateral effort by the Insurer retroactively to cancel the "separate and independent insurance" created by the renewal declaration. That effort, the Bank says, was ineffectual because the "union mortgage clause" expressly provided that

4

the Insurer must give the Bank ten days notice before canceling, thus giving the Bank an opportunity either to obtain other insurance or to foreclose. The Insurer gave the Bank no advance notice of intent to cancel.[*]

In New Brunswick Fire Ins. Co. v. Morris Plan Bank, 136 Va. 402, 407-408, 118 S.E. 236, 237-38 (1923), we considered the distinction between a simple "loss payable clause" and a "union mortgage clause" like that under consideration here. In that case, the owner of the insured car had, during the existence of New Brunswick's policy and without the knowledge of either New Brunswick or the lienholder bank, purchased duplicate insurance on the car from another insurance company, an act that rendered New Brunswick's policy void under a specific policy provision inserted to prevent fraud. The New

---

[*] A witness for the Insurer testified that the renewal declaration was generated and sent to the Bank a month before the policy was to expire, at the same time a bill for the renewal premium was sent to the owner, as a matter of routine. A witness for the Bank testified that the Bank relied on it by putting the new expiration date into the Bank's computer to show "when that account needed to be monitored again for insurance purposes." The Bank does not contend, however, that its cause of action is founded upon its reliance, to its detriment, upon the Insurer's misleading promise of future conduct. Indeed, we expressly decided, in W. J. Schafer Assoc., Inc. v. Cordant, Inc. 254 Va. 514, 521, 493 S.E.2d 512, 516 (1997), that the doctrine of promissory estoppel should not be adopted in Virginia. The Bank's claim is based entirely upon its contention that there was a new policy of insurance covering its lienholder's interest beginning January 5, 2002.

Brunswick policy contained a "loss payable clause" providing simply: "Loss, if any, payable to [the bank], as their interest may appear." Id. at 403-04, 118 S.E. at 236. We held that there was no insurance in existence at the time of the loss because of the owner's act in obtaining duplicate insurance and that the lienholder had no more right to recover under the policy than the owner had. The lienholder's interest was collateral to that of the owner and its rights against the insurer were no greater than the owner's. In so holding, we pointed out that the lienholder could have avoided that result by requiring a "union mortgage clause," such as that considered here. We said:

> This clause has been frequently construed, and the authorities are unanimous in holding that it acts as a separate and independent insurance of the mortgagee's interest, to this extent, at least, that no act or omission on the part of the owner, which occurs after the issuance of the policy, shall affect the mortgagee's right to recover.

Id. at 408, 118 S.E. at 237-38.

If the Adams had, by some act or omission during the policy term, rendered the coverage void, as the owner did in New Brunswick, the result here would be opposite to that in New Brunswick because of the effect of the "union mortgage clause." The question before us is different. The contract of insurance had expired at the time of the accident because

6

of the Adams' failure to accept the Insurer's offer to renew the policy by paying the required part of the renewal premium. The Adams, therefore, had no rights against the Insurer on January 19, 2002. The determinative question is whether the renewal declaration sent to the Bank by the Insurer on December 6, 2001, created independent coverage of the Bank's interest in the car effective from January 5, 2002, until July 5, 2002, whether Adams purchased coverage for that period or not.

The authorities are in substantial agreement that the "union mortgage clause" creates an independent contract between the insurer and the lienholder that cannot be defeated by the owner's wrongful or negligent acts. The lienholder is not a beneficiary, however. Rather, the lienholder's coverage is subject to all the terms of the policy existing between the insurer and the owner. 4 Lee R. Russ & Thomas F. Segala, Couch on Insurance 3d § 65:32 (1996 & Supp. 2004). It is not a disconnected contract, but is "engrafted upon the contract of insurance contained in the policy itself and is to be rendered certain and understood by reference to the policy itself." The "union mortgage clause" does not nullify the terms of the original contract, "but creates a new contract containing those provisions the insurer made with the insured personally." Iowa Nat'l. Mut. Ins. Co. v. Central Mortg.&

Inv. Co., 708 P.2d 480, 483 (Colo. Ct. App. 1985) (quoting General Motors Acceptance Corp. v. Western Fire Ins. Co., 457 S.W.2d 234, 236-37 (Mo. App. 1970)).

Because the lienholder's coverage is subject to all the terms of the original policy except for his protection against the owner's wrongful or negligent acts, the lienholder is bound by the time limitations and procedural requirements the original policy contains. 4 Couch on Insurance 3d, §§ 65:46-47.

Applying these principles to the question before us, it is apparent that the underlying policy expired by its own terms on January 5, 2002 and that the "separate and independent insurance" afforded the Bank by the "union mortgage clause" was subject to the same terms. Because the policy was never cancelled by any party, its provision requiring ten days notice prior to cancellation never took effect.

The policy contained no provision for automatic renewal and imposed no duty upon any party to take any steps to renew it. Insurance coverage on the car would continue after its expiration date only if the owner and the Insurer entered into a new contract. As noted above, the Insurer made an offer to renew, but the owner failed to accept it and, as a result, there was no contract of insurance covering the car on January

19, 2002, the date of the accident.  This result follows from the terms of the policy itself, to which the Bank's coverage was also subject.  Because the relationship between the Bank and the Insurer was not a "disconnected contract" but contained the "provisions the insurer made with the insured personally," the renewal declaration was ineffectual to create new insurance in the Bank's favor where no contract of insurance existed between the Insurer and the insured.

We agree with the trial court's analysis and will affirm the judgment.

<u>Affirmed</u>.