WEST SUBURBAN BANK OF DARIEN, an Illinois Banking Corporation, Plaintiff,

v.

BADGER MUTUAL INSURANCE COMPANY, Defendant.

No. 95 C 2841.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 22, 1996.

---

John Joseph Pcolinski, Jr., Mark F. Kalina, Guerard, Kalina & Butkus, Wheaton, IL, for West Suburban Bank of Darien.

Frederick H. Crystal, Richard Dennis Heytow, Jeffrey L. Warnick, Crystal, Heytow and Warnick, P.C., Chicago, IL, for Badger Mutual Insurance Company.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiff, West Suburban Bank of Darien ("West Suburban"), has filed a motion for summary judgment against defendant, Badger Mutual Insurance Company ("Badger"). Badger has also filed a motion for summary judgment against West Suburban. For the reasons discussed below, West Suburban's motion is granted in part and denied in part, and Badger's motion is granted in part and denied in part.

### Undisputed Facts [1]

On February 10, 1988, West Suburban loaned Dough, Inc. ("Dough") $580,000.00. As security for repayment of that loan, West Suburban Bank Trust No. 8019 (the "trust") executed and delivered to West Suburban a mortgage in the amount of $315,000.00. Also on February 10, 1988, Dough executed and delivered to West Suburban a promissory note in the amount of $265,000.00. As security for this note and additional security for the $315,000.00 note, Theodore and Frances Somenek, the president and secretary of Dough respectively and beneficiaries of the trust, executed and delivered to West Suburban a collateral assignment of 100% of the beneficial interest and power of direction in the trust.

The trust owned certain real property known as Aurelio's Family Pizzeria, 520 Bolingbrook, Bolingbrook, Illinois (the "property"). On April 28, 1994, Badger issued a commercial insurance policy insuring the property, naming Dough, doing business as

---

1. My description of the undisputed facts is based on the Local Rule 12(M) statement that West Suburban submitted in connection with its motion for summary judgment. Badger has filed neither a Local Rule 12(N) statement in response to West Suburban's Local Rule 12(M) statement nor a Local Rule 12(M) statement in support of its own motion for summary judgment. Badger does, however, respond to some of West Suburban's statements of fact in the "Facts" section of its brief. The facts that Badger has not controverted are deemed accepted. LOCAL RULE 12(M); *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1313 (7th Cir.1995).

Aurelio's Family Pizzeria, as the insured and West Suburban as the mortgagee.

On July 5, 1994, a fire completely destroyed the property. As of the date of the fire, the unpaid balance of the $315,000 note was $233,082.96, and the unpaid balance of the $265,000.00 note was $148,309.90. Subsequent to the fire, West Suburban released its mortgage lien in order to allow the owner to sell the property. On July 12, 1995, the property was sold for a gross price of $385,-000.00. West Suburban is holding the net proceeds, $315,000, in escrow pending the outcome of this litigation.

Dough tendered to Badger a proof of loss under the insurance policy, but Badger denied Dough's claim. West Suburban requested that Badger pay it under the insurance policy, but Badger has not done so. As a result, on December 11, 1995 West Suburban filed this lawsuit seeking judgment for the amount of its claim secured by the property insured under the policy. Badger counterclaimed for a declaration that it has no obligation to West Suburban under the insurance policy, or in the alternative, that it is not obligated to indemnify West Suburban for amounts resulting from loss to property other than the building.[2]

### 1.

West Suburban is attempting to collect under the mortgage provisions of the insurance policy for the debt secured by the mortgage as well as the debt secured by the assignment of the beneficial interest. A mortgage and an assignment of beneficial interest are different: "[a] lien upon a beneficial interest in an Illinois land trust is not a lien upon the real property itself," such as a mortgage. *Melrose Park National Bank v. Melrose Park National Bank*, 123 Ill.App.3d 282, 78 Ill.Dec. 622, 624, 462 N.E.2d 741, 743 (1st Dist.1984). The cases West Suburban

cites do not support its argument that I should treat the assignment of beneficial interest as a mortgage for the purposes of the mortgage provisions of the policy. *See International Insurance Company v. Melrose Park National Bank*, 145 Ill.App.3d 286, 99 Ill.Dec. 462, 463–65, 495 N.E.2d 1197, 1198–1200 (1st Dist.1986) (deciding legal effect of installment agreement to sell building on amount defendant could recover under insurance policy after fire damaged building and noting similarity of interest of a seller under an installment agreement to interest of a mortgagee); *Redfield v. Continental Casualty Corp.*, 818 F.2d 596, 607 (7th Cir.1987) (holding that trustee in bankruptcy for owner of property could sue on fire insurance policies despite fact that policies did not name owner as the insured and discussing nature of the land trust (rather than an assignment of a beneficial interest in a land trust)).[3]

This predicament creates the question of whether the assignment of the beneficial interest to West Suburban as lender is in essence a mortgage. If so, West Suburban could look to the mortgage provisions of the insurance policy to recover the balance due under both notes. It is undisputed that the assignment of the beneficial interest secured the $265,000.00 note. The record before the court does not indicate any purpose for the assignment of the beneficial interest in the trust other than as collateral for that note. Furthermore, the assignment took place only twenty days subsequent to the creation of the trust. These facts weigh in favor of finding that the arrangement constituted a mortgage. *See Capitol Bank & Trust of Chicago v. Fascetta*, 771 F.2d 1077, 1079–80 (7th Cir.1985).

Nevertheless, in order to conclude that the financing arrangement constituted a mortgage, the trust agreement would have to

---

**2.** Badger's counterclaim also requested a declaration that "it is not obligated to pay the mortgagee prior to completing its investigation of its obligations to the named insured resulting from the arson fire which caused the damage...." Because Badger has denied Dough's claim, this request is moot.

**3.** West Suburban also argues that the fact that the Illinois Mortgage Foreclosure Act provides for foreclosure of any collateral assignment of

beneficial interest in certain circumstances is persuasive. *See* 735 ILCS 5/15–1106(a)(3). Section 15–1106(a)(3)(iii) permits foreclosure, however, only when "the security agreement or other writing creating the collateral assignment permits the real estate which is the subject of the land trust to be sold to satisfy the obligations." The assignment in this case does not grant such permission.

provide for the sale of the trust real estate upon default. *See id.* at 1080. The assignment of the beneficial interest did not provide for such a sale. Also, the security transaction concerned only the trust beneficial interest and did not refer to the real estate res of the trust. *See id.* Accordingly, West Suburban cannot recover under the mortgage provisions of the insurance policy for the debt secured by the assignment of the beneficial interest (*i.e.*, the $265,000 note).

### 2.

■ West Suburban can, however, recover the balance of the $315,000.00 note at the time of the fire. *See Great–West Life Assurance Company v. General Accident Fire and Life Assurance Corporation, Limited,* 116 Ill.App.3d 921, 72 Ill.Dec. 297, 301, 452 N.E.2d 550, 554 (1st Dist.1983) ("[T]he balance of the debt at the time of the fire determines the amount recoverable by the mortgagee."). This note was secured by the mortgage. West Suburban was named as the mortgagee on the insurance policy. Therefore, its interest in the property secured by the mortgage was insured.

Badger argues, however, that the policy did not insure West Suburban's interest in the property pursuant to the mortgage. It first contends that it may pay West Suburban as mortgagee only after it has determined that the policy is void as to Dough. West Suburban filed its complaint in April, 1995; and Badger did not determine that the policy was void as to Dough until October, 1995. Nevertheless, because Badger has already decided that it has no liability with respect to Dough, even if it did so after plaintiff filed its complaint, this argument does not assist it.

Badger further argues that the fact that Dough rather than the mortgagor (*i.e.*, the trust) is listed on the insurance policy as the insured prevents West Suburban from recovering as the mortgagee. The policy, however, does not anywhere state that the primary insured must be the mortgagor of the named mortgagee's mortgage in order for the mortgagee's interest to be insured. As support for its argument, Badger points to the provision of the insurance policy that states: "If we pay the mortgagee for a loss where your insurance may be void, the mortgagee's rights to collect that portion of the mortgage debt from you [ (Dough) ] then belongs to us." Thus Badger maintains that if it pays West Suburban as mortgagee, then it would have no recourse to recover its money because West Suburban has no rights against Dough. In making this argument, Badger has ignored the rest of the provision, which reads:

> The insurance for the mortgagee continues in effect even when your insurance may be void because of your acts, neglect, or failure to comply with the coverage terms.
>
> . . .
>
> [W]e may pay the mortgagee the remaining principal and accrued interest in return for a full assignment of the mortgagee's interest and any instruments given as security for the mortgage debt.

Under this language, if Badger pays West Suburban, then it will receive an assignment of West Suburban's interest against the trust as mortgagor. Consequently, contrary to Badger's argument, in the event that it pays West Suburban, it certainly would not "receive nothing" in return.

Badger's next argument rests on the fact that West Suburban collected the net proceeds of $315,000.00 from the sale of the property. Badger contends that this figure more than satisfies the debt secured by the mortgage, and consequently, West Suburban is not entitled to collect from Badger. Because West Suburban presently is holding the $315,000 in escrow, however, it has not actually received that amount. As a result, Badger's argument cannot carry the day.

■ Badger contests West Suburban's reliance on the proof of loss indicating that the replacement cost of the building on the property is $960,000.00. Badger does not agree that this figure is accurate. Moreover, the insurance policy provides that "[r]eplacement cost valuation does not apply until damaged or destroyed property is repaired or replaced." Badger implies that the building has not been replaced. West Suburban does not suggest or submit evidence indicating otherwise. Thus West Suburban's claim is limited to the "actual cash value." In any

event, that West Suburban's claim is limited to this amount does not hurt it, as it is entitled to collect only the balance of the debt at the time of the fire, *i.e.*, $233.082.96.

Badger finally argues that the insurance policy did not insure West Suburban's interest pursuant to the February, 1988 security agreement. It also notes that West Suburban does not argue that the policy insured its interest under this security agreement. It is not necessary to decide whether the policy provided such insurance, as I agree that West Suburban does not argue that it did.

### 3.

■ West Suburban argues that it is entitled to attorney's fees and costs pursuant to 215 ILCS 5/155, which permits courts to award fees and costs if it appears that an insurance company's delay in settling a claim has been "vexatious and unreasonable." West Suburban also contends that it is entitled to prejudgment interest on its claim under 815 ILCS 205/2, allowing creditors such interest "on money withheld by an unreasonable and vexatious delay of payment." Badger partially succeeded on its motion for summary judgment. Thus I cannot find that in not settling West Suburban's claim for the amount it demanded, Badger was unreasonable and vexatious. Accordingly, West Suburban's request for an award of attorney's fees, costs, and prejudgment interest is denied.

### *Conclusion*

For the foregoing reasons, West Suburban's motion for summary judgment is granted in part and denied in part, and Badger's cross-motion for summary judgment is granted in part and denied in part.