

FILED

Sep 17 2013, 5:37 am

CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**KATHERINE J. NOEL**
Noel Law
Kokomo, Indiana

ATTORNEYS FOR APPELLEES:

**JAMES P. STRENSKI**
**TARA STAPLETON LUTES**
Cantrell Strenski & Mehringer, LLP
Indianapolis, Indiana

**DAN J. MAY**
Kokomo, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NANCY A. MISSIG, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 34A02-1212-CT-1002 |
| | ) | |
| STATE FARM FIRE & CASUALTY | ) | |
| COMPANY, ANDRE M. MISSIG, and | ) | |
| AUTUMN MISSIG, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE HOWARD CIRCUIT COURT
The Honorable Lynn A. Murray, Judge
Cause No. 34C01-1008-CT-0829

**September 17, 2013**

**OPINION–FOR PUBLICATION**

**BAKER, Judge**

Today we are confronted with the issue of whether the appellee-defendant State Farm Insurance Company (State Farm) had a duty to inquire about the circumstances surrounding a particular land sale transaction before issuing a homeowner's policy to individuals who may have had an interest in the insured property. Specifically, it was contended that the appellant-plaintiff Nancy Missig's interest in the particular real property was a matter of public record and, therefore, State Farm had sufficient notice of Nancy's interest in the property before issuing the policy to her son and daughter-in-law, the appellees-defendants Autumn and Andre Missig. As a result, Nancy claims that State Farm was negligent in issuing the policy without naming her as an insured in the policy.

The trial court entered sixty-nine findings of fact and conclusions of law, and granted equitable relief to Nancy against Andre and Autumn for the full unpaid balance owed under a land contract plus accrued interest. The trial court also granted a lien and constructive trust in Nancy's favor with regard to other property that Autumn had purchased with the insurance proceeds that State Farm had paid her and Andre following the loss of another residence in a fire. However, it determined that Nancy was not entitled to relief from State Farm.

Andre also cross-appealed, claiming, among other things, that State Farm was liable for failing to take any steps to recover the proceeds of the check that State Farm had issued where Autumn had forged his signature. Andre also maintained that the trial court erred in not ordering State Farm to pay Nancy for her insurable interest in the real

2

estate because it had notice or knowledge of Nancy's claim to the fire loss proceeds, that State Farm was negligent in issuing the homeowner's policy, and that it breached a duty of good faith to its policy holders because it purportedly failed to inquire as to all of the insurable interests in the residence that sustained a loss in the fire. Finally, Andre asserted that he is entitled to indemnification by State Farm for an amount that is allegedly owed to Nancy for her insurable interest in the residence.

We note that Andre raises several of these issues for the first time in his brief on cross-appeal. Moreover, the circumstances properly established that Autumn and Andre were liable to Nancy, and the trial court correctly determined that State Farm had no liability to Andre for Autumn's actions, and no evidence was presented that State Farm breached any duty of good faith and fair dealing to Andre.

Finally, the circumstances showed that Andre was under a duty to pay Nancy some of the insurance proceeds, and his failure to do so superseded any alleged wrongful conduct on State Farm's part. As a result, we affirm the trial court's judgment.

## FACTS

In February 1990, Raymond and Nancy Missig (the Missigs) purchased a residence at 3839 East 250 North in Kokomo (hereinafter referred to as the Kokomo Property), titling the real estate in both of their names as husband and wife with rights of survivorship. Raymond died on November 22, 1999. Thus, Nancy became the sole owner of the property. Raymond and Nancy have one son, Andre.

3

In 2001, Andre and his girlfriend Autumn, along with Autumn's minor children, eventually moved into the home with Nancy. Shortly thereafter, Nancy moved from the residence because the living arrangements were not working. Thus, Andre, Autumn, and the children were the sole occupants of the residence. Andre and Autumn were married sometime in 2002.

In April 2002, Nancy as the seller, and Andre and Autumn as the buyers, entered into two nearly identical land installment contracts regarding the property. The contract provided for a purchase price of the property in the amount of $71,600. It was agreed that Andre and Autumn would make monthly payments of $400. Under the contracts, Andre and Autumn were to provide the insurance on the property and pay the property taxes. Although Andre and Autumn made only seven installment payments, Nancy continued to pay the property taxes and insurance premiums. As of March 14, 2012, Andre and Autumn owed a balance of $153,642.28 to Nancy under the April 2002 land contract.

In 2005, the Howard County Auditor's office informed Nancy that the property was not eligible for a homestead exemption because Nancy no longer lived there. As a result, the property taxes were going to increase substantially. However, in 2006, Nancy quitclaimed the property from herself as the sole owner to herself and Andre as co-tenants with rights of survivorship, so Andre could claim the homestead exemption and decrease the tax burden. Id.

4

There was no mortgage on the residence, and Nancy invested approximately $48,000 for improvements to the residence, including new flooring, adding a bedroom, and installing new plumbing. From 2001 until 2008, Nancy paid the taxes and insurance on the property. After 2006, Nancy obtained homeowners' insurance through Shelter Insurance (Shelter) because the previous company, Auto-Owners Insurance, either cancelled or would not renew the property. The Shelter policy had to be renewed in 2007; however, Nancy told Andre and Autumn that they should begin paying the homeowners' insurance premiums. In response, Autumn called to obtain quotes and decided on a policy with State Farm. Andre told Nancy that he and Autumn would be obtaining a State Farm homeowners' policy through agent Linda Newell's office.

After Nancy spoke with Andre in May 2007, Nancy telephoned Newell's State Farm office and spoke with Sheila Richardson, a State Farm certified service representative. Nancy told Richardson that her son and daughter-in-law were purchasing a homeowners' policy for the residence in which Nancy was a co-owner and wanted to know if she would be a named insured on the policy. Richardson told Nancy that if she were an owner of the property, she would be named on the insurance policy as an additional insured. On the other hand, Richardson made no promise to Nancy that she would, in fact, be on a policy that would be issued at some point in the future.

Andre and Autumn waited until January 2008, to apply for the State Farm policy. On January 22, 2008, Autumn completed the application process with Richardson. Autumn informed Richardson that she and Andre jointly owned the home and her

5

mother-in-law, Nancy, owned only the land. Autumn requested that the policy be issued to her and Andre because she wanted to insure their residence and personal property. Autumn specifically told Richardson that she did not want Nancy's name on the policy.

When completing the application, Richardson could not recall whether she checked the county's website to obtain information such as the age of the residence or square footage. However, she indicated that she had probably done so. The county records would have established that Andre and Nancy were co-owners of the property. On the other hand, it was Richardson's experience that information on the assessor's website was occasionally inaccurate. Also, sometimes the property owner information would be on the assessor's website, and sometimes it would not. Despite recalling her telephone conversation with Nancy seven months earlier, Richardson accepted Autumn's word that Nancy's interest was limited to the land and honored Autumn's request that Nancy not be named as an insured on the policy.

State Farm does not require that its agents or employees independently verify ownership of a property before accepting an application for homeowners' insurance. State Farm issued an insurance policy listing Andre and Autumn as the insureds, retroactive to January 22, 2008.

The relevant portion of the policy provided that

**COVERAGE A—DWELLING**

1. **Dwelling.** We cover the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations.**

6

**\* \* \***

**COVERAGE B—PERSONAL PROPERTY**

1.  **Property Covered.**  We cover personal property owned or used by an insured while it is anywhere in the world.  This includes structures not permanently attached to or otherwise forming a part of the realty.  At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied exclusively by an insured.

**\* \* \***

**COVERAGE C—LOSS OF USE**

1.  **Additional Living Expense.**  When a Loss Insured causes the residence premises to become uninhabitable, we will cover the necessary increase in costs you incur to maintain your standard of living for up to 24 months.  Our payment is limited to incurred costs for the shortest of:  (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months.  This coverage is not reduced by the expiration of this policy.

**\* \* \***

**COVERAGE A—DWELLING**

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I—LOSSES NOT INSURED.**

**COVERAGE B—PERSONAL PROPERTY**

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I—LOSSES NOT INSURED.**

Appellant's App. p. 310, 319-20, 323.

Andre and Autumn paid the premiums on the policy and renewed the contract and paid the premiums that were due in January 2009 and January 2010.  After purchasing the policy, Andre told Nancy that she was included on the policy.  Nancy did not request a copy of the policy or verify her status on the policy.

7

On May 4, 2010, the residence burned to the ground that resulted in a total loss. Autumn went to the State Farm office that was currently managed by Andre Brown and reported the incident. Nancy also went to the State Farm office to obtain information regarding the claims process. At that time, Brown told Nancy that she was not a named insured on the policy and could not discuss the claim with her. Brown subsequently contacted the claims adjuster, Zach Dunham, and informed him that Nancy was claiming an interest in the policy proceeds.

When Nancy heard that she was not named in the policy, she contacted Richardson, who was employed by another insurance agency in Kokomo. Richardson stated that Nancy was not on State Farm's policy because Autumn specifically informed her that Nancy was not an owner of the residence.

During the investigation of the claim, Autumn told Dunham that she and Andre had purchased the residence on contract from Nancy, and that Nancy no longer held an interest in the house. However, Dunham did not request a copy of the real estate contract. Despite this fact, and despite being called by Andre Brown's office regarding Nancy's purported interest in the real estate, Dunham did not contact Nancy or search the county property records to confirm or deny Nancy's claim. According to Dunham, State Farm does not require its claims adjusters to verify ownership or interest in property before issuing payment of claims. Moreover, State Farm authorizes its adjusters to pay claims only to those individuals who are named in the policy. Dunham did not require

8

Andre and Autumn to complete a proof of loss as to the residence, except for a claim regarding personal property items.

From May 2010, to August 2010, State Farm issued proceeds from the policy to Andre and Autumn as follows: $194,876.68 under Coverage A for damages to the home; $74,259.81 under Coverage B for damage to their personal property; and $1,647.64 under Coverage C for additional living expenses, for a total of $270,784.13. On May 26, 2010, State Farm issued a check payable to Andre and Autumn for $206,624.32, representing partial satisfaction of the policy claims. After receiving State Farm's check, Autumn endorsed her name, forged Andre's signature on the check, and deposited the funds into their joint checking account.

Within a few days of depositing the funds, Autumn purchased a new residence in Windfall (the Windfall Property), at a purchase price of $171,000. Autumn had this residence titled only in her name. Andre knew that Autumn was using the insurance proceeds to purchase the Windfall Property, and chose not to join her in purchasing or owning the property. Autumn made this purchase while Nancy was in Arizona conducting personal business, without giving notice to her. Autumn, her children, and Andre moved into the residence on the Windfall Property in the summer of 2010.

In August 2010, State Farm issued another check payable to Andre and Autumn in the amount of $41,125.12, as partial satisfaction of their claims. They both endorsed that check and deposited those funds into their joint checking account. Andre used a portion of those proceeds for the purchase of a four-wheeler and some power tools.

9

Nancy soon learned she would not be receiving any of the policy proceeds from State Farm; however, she requested that Andre and Autumn share the proceeds with her. Nancy never received anything from Andre or Autumn.

Nancy filed her complaint for damages on August 20, 2010, against State Farm, Andre, and Autumn. Nancy sought to recover a judgment in an amount equal to the insurance proceeds that State Farm paid to Andre and Autumn, and for an equitable purchase money lien on the Windfall Property. Nancy claimed that State Farm should pay her $153,642.28, plus interest on the funds that were paid to Andre and Autumn. Nancy claimed that Richardson assured her that she would be a named insured under the policy.

On January 31, 2012, State Farm filed a motion for summary judgment. Andre filed a cross-claim against State Farm seeking relief for indemnification regarding any claims that Nancy had against him for the insurance proceeds. Andre also alleged, among other things, that State Farm and Autumn were liable to him for forgery and embezzlement of the policy proceeds.

Following a hearing on May 7, 2012, the trial court denied State Farm's motion for summary judgment, concluding that there were genuine issues of material fact for trial. As of March 14, 2012, Andre and Autumn owed Nancy a balance of $153,642.28 on the April 2002 land purchase contract.

The matter proceeded to a bench trial, and following the presentation of the evidence, the trial court issued an order on September 24, 2012, entering judgment in

State Farm's favor and against Nancy. However, the trial court entered a judgment in favor of Nancy against Andre and Autumn for the full, unpaid balance of the land contract, plus interest at 8% per annum accrued since March 14, 2012, until paid. The trial court determined that no contractual relationship existed between Nancy and State Farm and that Nancy was not a party to the policy. Moreover, the trial court observed that Nancy did nothing to confirm that her interest in the property was protected.

The trial court also ordered an equitable lien and constructive trust in Nancy's favor on the Windfall Property. More particularly, the judgment and order entered on September 24, 2012, provided that

> State Farm has already paid more than $270,000.00 to their named insureds Andre and Autumn Missig for property loss from the fire. Nothing prevented Andre and Autumn from paying part of these proceeds to Nancy except for their own unwillingness to do so. Neither equity nor justice dictates a result in which State Farm pays Nancy more, when her contract buyer family members were over-compensated for their individual losses and should have equitably shared the proceeds with her.

> * * *

> Thirdly, the court in [Property Owners Ins. Co. v.] Hack,[596 N.E.2d 396 (Ind. Ct. App. 1990),] provided that if the insurer has knowledge of a buyer's covenant to insure for the seller's benefit, the insurer is under a duty to disburse policy proceeds as though the seller's interest appeared in the policy, even if the buyer breached its covenant. Id., at 400. Here, there is no evidence that State Farm's agents had knowledge of any duty Andre and Autumn had to insure the property for Nancy's benefit, contrary to the facts in the Hack case.
> * * *
> Under Hack, what Nancy told Sheila Richardson seven (7) months before Andre and Autumn applied for their policy was not enough to place some burden of further inquiry upon State Farm.

11

Appellant's App. p. 32-33.

As for Andre's cross-claim, where he alleged that State Farm was liable for failing to take any steps to recover from Autumn the proceeds of the check in which she had forged Andre's name, it was determined that State Farm was not liable to Andre for Autumn's actions because those funds were not embezzled.

The trial court also found that no evidence was presented that State Farm breached any duty of good faith and fair dealing that was owed to Andre. There was no evidence that State Farm refused to pay policy proceeds with regard to Andre, caused a delay in paying those proceeds, deceived the insureds, or exercised unfair advantage in their settlement of the claim against them.

The trial court also observed that no evidence was presented that Andre had any contractual or statutory right of indemnity. Indeed, it was undisputed that Andre and Autumn were primarily at fault regarding the claims that Nancy brought against them. Andre and Autumn made the conscious decision to not pay Nancy the $270,000-plus policy proceeds that were jointly issued to them by State Farm. It was also determined that a claim of common law indemnity was not available to Andre. As a result, the trial court entered judgment for State Farm on Andre's cross-claim against it. Andre was also not entitled to recover against Autumn on his cross-claim because he knew that Autumn had forged his name on the check and deposited it into their joint checking account. Andre was aware of Autumn's intent to purchase the property, yet he chose not to sign the purchase agreement or attend the closing.

12

Nancy now appeals, and Andre cross appeals.

DISCUSSION AND DECISION

I. Nancy's Claims

While Nancy does not challenge the trial court's judgment in her favor as against Autumn and Andre, she contends that she was also entitled to equitable relief against State Farm. Specifically, Nancy maintains that she was entitled to the insurance proceeds from State Farm because the company had "actual knowledge" that she was the titled owner of the Kokomo Property that was destroyed in the fire. Appellant's Br. p. 1.

In reviewing Nancy's claims, we note that deference is given to the trial court's judgment where the proceeding sounds in equity and judgments in equity are clothed in a presumption of correctness. Mayfair Investment Corp. v. Bryant, 922 N.E.2d 123, 131 (Ind. Ct. App. 2010). When reviewing cases of equity, the trial court's findings and judgment will be reversed only if clearly erroneous, that is, only if this Court is left with a definite and firm conviction that a mistake has been made. We look only to the evidence and inferences therefrom supporting the judgment. We do not reweigh the evidence or judge the credibility of the witnesses, and will reverse only where the evidence leads to a conclusion directly opposite of that reached by the trial court. Indiana Lawrence Bank v. PSB Credit Services, Inc., 706 N.E.2d 570, 572 (Ind. Ct. App. 1999).

As noted above, the trial court found in Nancy's favor with regard to her equitable claims against Andre and Autumn. More particularly, the $153,642.28 judgment represented the balance that Andre and Autumn owed to Nancy on the April 2002 land

13

purchase contract. Appellant's App. p. 29, 34. The trial court also awarded Nancy a lien and constructive trust in the judgment amount plus interest in the Windfall Property, which was the real estate that Andre and Autumn had purchased with the State Farm proceeds. Appellant's App. p. 27, 34. Thus, while Nancy may not have prevailed against State Farm, the trial court awarded her damages against Andre and Autumn beyond the damages that she requested in her complaint. More specifically, the trial court entered the following finding and conclusion:

> State Farm has already paid more than $270,000.00 to their named insureds Andre and Autumn Missig for property loss from the fire. Nothing prevented Andre and Autumn from paying part of these proceeds to Nancy except for their own unwillingness to do so. Neither equity nor justice dictates a result in which State Farm pays Nancy more, when her contract buyer family members were over-compensated for their individual losses and should have equitably shared the proceeds with her.

Appellant's App. p. 33.

As noted above, prior to the fire on May, 2010, Nancy jointly owned the Kokomo Property with her son, Andre. However, the result that Nancy sought in this appeal, including the money damages from State Farm, along with the equitable remedies already awarded against Andre and Autumn, would lead to the inequitable result of placing her in a far better position than she was in before the May, 2010 fire at the Kokomo Property.

The parties agree that this Court's holding in Property Owners Ins. Co. v. Hack, 559 N.E.2d 396 (Ind. Ct. App. 1990), controls the outcome here. However, the parties argue about the scope of the holding in Hack as well as the application of its rationale under the facts and circumstances here.

14

In Hack, it was shown that Joseph and Jean Hack (collectively, "the Hacks") sold some property on an installment land contract to Rex and Betty Lacey (collectively, "the Laceys"). Under that agreement, the Laceys were required to obtain insurance on the land for the Hacks' benefit. In June 1987, the existing insurance carrier notified the Hacks that the Laceys had permitted the required coverage to lapse for failing to pay the required premiums.

The Hacks contacted Victor McGill, an insurance broker for Property Owners Insurance, and explained the situation. The Hacks informed McGill that there were three interested parties; the bank as mortgage holder, the Hacks as sellers, and the Laceys as the buyers. Insurance was then issued that listed the Hacks on the policy in some capacity. Later, when a fire destroyed the property at issue, the insurance company refused to pay Hack the proceeds. Id. at 398.

In light of these circumstances, the Court recognized that entitlement to proceeds arises in one of three ways. First, as was the situation in Hack, the seller is entitled to the insurance proceeds if its name appears on the policy under one or more of several designations. Second, if a buyer covenants to keep the property insured for the seller's benefit and obtains insurance without assigning it or making it payable to the seller, the covenant creates an equitable lien in the seller's favor upon the proceeds that the buyer holds after a loss. Third, if the insurer has knowledge of a buyer's covenant to insure for the seller's benefit, the insurer is under a duty to pay the policy proceeds as though the

15

seller's interest appeared in the policy, even if the buyer breached its covenant. Id. at 400.

The circumstances show that the Hacks sought insurance to protect their interests in the property at issue after the Laceys had allowed the coverage to lapse. Mr. Hack clearly spelled out the respective interests of himself, the Laceys, and the mortgage company when he contracted for the insurance. Indeed, Hack was the customer and premium payer on the policy that was taken out through Property Owners, the insurance company. Id. at 398.

Here, unlike the circumstances in Hack, Nancy was not the State Farm customer and did not pay the premiums. Rather, Autumn was the customer and premium payer, and it is undisputed that she told State Farm staff member Richardson, that: 1) Nancy only owned the land, and Andre owned the structure at the Kokomo Property; and, 2) she did not want Nancy listed on the policy. State Farm then followed the wishes of its customer and premium payer and did not include Nancy as a named insured on the policy.

Nancy appears to claim that State Farm had some legal or equitable duty to place her on the policy despite Autumn's explicit instructions not to do so. Such a finding would create an absurd result because insurance companies would be charged by law or equity to disregard the express wishes of its customer and premium payer and put entities on policies as additional insureds despite the policyholder's explicit instructions to the contrary. Under Indiana law, an insurance broker who undertakes to procure insurance

16

for another is the agent of the proposed insured. <u>T.R. Bulger, Inc. v. Indiana Ins. Co.</u>, 901 N.E.2d 1110, 1116 (Ind. Ct. App. 2009). Here, had State Farm placed Nancy on the policy contrary to Autumn's instructions, it would have breached a duty to Autumn. For these reasons, the holding in <u>Hack</u> does not apply in this instance.

Nancy also directs us to the May 2007 telephone conversation with Richardson as evidence that State Farm was put on notice of her interest in the Kokomo Property, which in turn triggered a duty of further inquiry. However, Nancy's call to Richardson took place more than seven months before Autumn even applied for coverage. As noted above, that call was with regard to a hypothetical scenario, and there was no promise of coverage either then or in the future made during the call. Tr. p. 43-44.

Also, as pointed out above, the fact that distinguishes this matter from all the cases that Nancy cites in her appellate brief is that the representations made in those cases were made by an applicant for the insurance policy. In this case, Nancy never applied for State Farm insurance. And again, Autumn was the applicant who unequivocally stated that she did not want Nancy on the policy. Under these facts, the trial court's finding and conclusion that, "what Nancy told Sheila Richardson seven (7) months before Andre and Autumn applied for their policy was not enough to place some burden of further inquiry upon State Farm" was correct, and not clearly erroneous. Appellant's App. p. 37.

Finally, we note that Nancy attempts to establish that State Farm had both actual and constructive knowledge of her ownership interest in the Kokomo Property. Even assuming that this is true for the sake of argument, there was no equitable duty on State

17

Farm's part to pay policy proceeds to Nancy. The <u>Hack</u> Court specifically found that a seller's insurable interest alone does not guarantee entitlement to the proceeds of a buyer's insurance. <u>Id.</u> at 399.

In our view, the primary inquiry is not State Farm's knowledge of Nancy's ownership interest in the Kokomo Property; rather, it is State Farm's knowledge (or lack thereof) of any covenant that Andre and Autumn had to insure the Kokomo Property for Nancy's benefit. And there was absolutely no evidence presented at trial that State Farm had any knowledge whatsoever of such a covenant. No witness informed Richardson of any such covenant in the April, 2002 land purchase contract when the insurance was applied for, and it is undisputed that Nancy never recorded the land purchase contract. Tr. p. 307.

Finally, Autumn represented to Dunham, the State Farm claims representative, that she and Andre had purchased the house on contract and that Nancy no longer had an interest in it. Tr. p. 116. In short, State Farm was not placed on any notice that Andre and Autumn had covenanted to insure the Kokomo Property for Nancy's benefit. Hence, State Farm never had a duty to pay Nancy any of the policy proceeds.

Finally, it is undisputed that Nancy made no inquiry between the issuance of the State Farm policy in January 2008 and the May 2010 fire regarding whether she was in fact listed as an insured on the State Farm policy. Tr. p. 58; 299. For all these reasons, we decline to set aside the trial court's judgment denying relief to Nancy against State Farm.

18

## II. Andre's Cross-Appeal

Andre cross-appeals, asserting, among other things, that State Farm breached its contract of insurance with Nancy and/or breached its duty to deal with him in good faith when State Farm placed Autumn's name on the fire loss proceeds check. Andre argues that State Farm should have tendered a check regarding the fire loss to the residence only to him and Nancy, the joint owners of the real estate, and then issued a separate check for the loss of personal property. In other words, Andre contends that State Farm failed to indemnify him for the losses that he sustained, and points out that State Farm should have had actual notice of Nancy's interest in the property.

Andre's initial argument on cross-appeal is that the trial court's finding that Nancy did not appear on the policy at the request of the policy's purchasers and insureds—Andre and Autumn—is not supported by the evidence and/or was contradictory. However, as stated above, the record reflects that Richardson testified at trial that Autumn affirmatively told her that Nancy was not to be included on the homeowners' policy. Tr. p. 49, 51. Autumn also testified that she did not want Nancy listed as a policyholder. Id. at 240-41. Therefore, Andre's argument that there was no evidence presented at trial to support the court's finding that Nancy was not on the State Farm policy at Autumn's request lacks merit.

We next observe that a party may not change theories on appeal and argue an issue that was not properly presented at the trial court level. Smither v. Asset Acceptance, LLC, 919 N.E.2d 1153, 1157 (Ind. Ct. App. 2010). The notion of fairness requires that

19

the opposing party have some notice that an issue is before the court which has not been pleaded or has been agreed to in a pretrial order. Pardue v. Smith, 875 N.E.2d 285, 289-90 (Ind. Ct. App. 2007).

Andre's arguments in his cross-claim against State Farm are that: 1) State Farm issued one of the settlement checks in the sum of $200,524.22 [sic] for payment of the fire claim in the names of Andre and Autumn; 2) Autumn forged Andre's name on the check; 3) State Farm was timely notified of the forgery but failed to take any steps to recover the proceeds of the check from Autumn and order a reissuance of the check; 4) Andre is entitled to one-half of the proceeds of the check for the sum of $200,524.22 [sic]; and, 5) Andre is entitled to reissuance of the check for the sum of $200,524.22 [sic] in his and Nancy's names. Appellee's Supp. App., p. 6.

In response to these claims, the trial court specifically found that there was no evidence presented at trial that State Farm breached its duty of good faith and fair dealing owed to Andre. More specifically, it was determined that Andre had no claim of contractual, statutory or common law indemnity against State Farm in relation to the claims brought against him and Autumn by Nancy because they were primarily at fault for making the decision not to pay Nancy any of the policy proceeds that State Farm had issued to them. Appellant's App. p. 35-36.

Notwithstanding the above, Andre submits several new claims and theories of recovery on appeal that he did not raise at trial. As a result, Andre has waived these contentions. Smither, 919 N.E.2d at 1157. However, even if Andre raised these

20

contentions in a timely manner, State Farm directs us to <u>Hack</u> and again points out that Nancy was not the customer, applicant, and payer of the premiums. Rather, it was Autumn who occupied these positions, and it is undisputed that she informed Richardson that Nancy owned only the land, that Andre owned the structure at the Kokomo Property, and that she did not want Nancy named in the policy.

As discussed above, State Farm followed Autumn's wishes and did not include Nancy as a named insured on the policy. Like Nancy, Andre's position in this matter appears to be that State Farm had some legal or equitable duty to place Nancy on the policy despite Autumn's explicit instructions that it not do so. Again, had State Farm placed Nancy on the policy contrary to Autumn's instructions, it would have breached its duty to Autumn. For these reasons, we reject Andre's contention that the holding in <u>Hack</u> dictates the result here.

Andre also directs us to Nancy's May 2007 telephone conversation with Richardson as evidence that State Farm was put on notice of Nancy's interest in the Kokomo Property that should have triggered a duty of further inquiry. However, Nancy's call to Richardson took place more than seven months before Autumn applied for insurance. As discussed above, the call involved a hypothetical scenario, and there was no promise of coverage either then or in the future when that call was made. Tr. p. 43-44.

Andre also asserts for the first time on cross-appeal that State Farm breached the insurance contract issued by it to him and Autumn. However, Andre does not direct us to

21

any evidence in the record that supports this proposition. Indeed, the State Farm policy provided coverage for accidental physical loss to the Kokomo Property and the personal property therein, unless it was otherwise excluded. It is undisputed that State Farm paid over $270,000 to Andre and Autumn for the May 4, 2010 fire at the Kokomo Property. And neither Andre nor Autumn claimed that State Farm did not pay enough for the loss. Thus, because there was no evidence that State Farm breached a specific provision of the policy that State Farm issued to Andre and Autumn that resulted in damage to Andre, his contention that State Farm breached the contract of insurance fails.

As stated above, Andre's only allegations that were initially asserted in his cross-claim against State Farm were that Autumn forged his name on the check, that State Farm was notified of the forgery but refused to take any steps to recover any of the proceeds from Autumn, and that he is entitled to one-half of the proceeds of the check.

With regard to these claims, the trial court specifically found that following the alleged forgery, Autumn deposited the check into her and Andre's joint checking account, and informed Andre that she had done so. Thus, the trial court determined that Autumn did not embezzle these proceeds because Andre was aware of the deposit and had access to the funds that were deposited in the joint checking account. Appellant's App. p. 36. Therefore, any liability on State Farm's part for Autumn's alleged embezzlement cannot lie where the evidence demonstrated that the funds were not embezzled in the first instance. And even if the evidence conclusively showed that

22

Autumn forged Andre's signature on the check and embezzled the proceeds, State Farm would not be liable to Andre for Autumn's actions.

Indeed, as we observed in Graves v. Johnson, 862 N.E.2d 716, 721-22 (Ind. Ct. App. 2007), and in accordance with Indiana Code section 26-1-3.1-310(b)(1), once a check is paid, it extinguishes the debt for which it is presented and such debt is extinguished even where a jointly payable check is sent to one co-payee and that co-payee embezzles the funds.[1]

Andre also apparently contends on cross-appeal that State Farm breached its duty of good faith and dealing, and maintains that the trial court erred in its September 24, 2012 order that "no evidence was presented at trial that State Farm breached any duty of good faith and fair dealing owed to Andre." Appellant's App. p. 35. Notwithstanding this contention, Indiana law recognizes a legal duty, implied in all insurance contracts, for the insurer to deal in good faith with its insured. Freidline v. Shelby Insurance Co., 774 N.E.2d 37, 40 (Ind. 2002). An insurance company's duty to deal in good faith and fair dealing includes the obligation to refrain from: (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising an unfair advantage to pressure an insured into settlement of his claim. Erie Ins. Co. v. Hickman, 622 N.E.2d 515, 519 (Ind. 1993). A cause of action will not arise every time an insurance claim is denied. Freidline, 774 N.E.2d at 40. A

---

[1] Interestingly, while Andre continues to press his claim against State Farm for Autumn's alleged forgery and embezzlement, Andre dismissed all cross-claims against Autumn prior to trial. Appellant's App. p. 216-217.

good faith dispute about whether the insured has a valid claim will not supply the grounds for recovery in tort for the breach of the obligation to exercise good faith. Id. This is true even if it is ultimately determined that the insurer breached the insurance contract. Id. On the other hand, an insurer that denies liability knowing there is no rational, principled basis for doing so has breached its duty. Id. To prove bad faith, the plaintiff must establish by clear and convincing evidence that the insurer had knowledge that there was no legitimate basis for denying liability. Id.

As a preliminary matter, we note that no evidence was introduced at trial that State Farm breached the insurance policy that it issued to Autumn and Andre, no evidence was presented that State Farm refused to pay policy proceeds to Andre, caused an unfounded delay in paying proceeds, deceived the insureds, or otherwise exercised any unfair advantage in their settlement of the claim. Appellant's App. p. 35. Indeed, Andre testified that he was not accusing State Farm of shorting himself or Autumn with regard to the fire claim. Thus, the trial court correctly found that there was no evidence of any breach of the duty of good faith and fair dealing owed to Andre on State Farm's part.

Andre further alleges that State Farm owed a duty to indemnify him if any judgment was entered against him in Nancy's favor. However, no evidence was presented at trial demonstrating that State Farm owed any contractual or statutory indemnity to Andre. Absent any contractual or statutory right to indemnity, a party may only bring an action for common law indemnity only if he or she is without fault. INS Investigations Bureau, Inc. v. Lee, 784 N.E.2d 566 (Ind. Ct. App. 2003).

24

Here, the trial court found that Andre had no common law indemnity claim because it was undisputed that he and Autumn bore primary fault in this matter in relation to any claims brought against them by Nancy. More particularly, the trial court determined that Andre and Autumn made a conscious decision not to pay Nancy any of the $270,000 policy proceeds that State Farm had issued jointly to them. Appellant's App. p. 35-36. Because Andre and Autumn were at fault with regard to the claims that Nancy brought against them, there is no claim of common law indemnity for Andre.

Finally, we note that Andre's general proposition in his cross-appeal appears to be that State Farm is liable to him because it failed to discharge its duty under Hack. However, as discussed above, it was established that State Farm did not breach such a duty. Moreover, Andre and Autumn had an independent duty to disburse some of the policy proceeds to Nancy, which they chose not to do. Thus, because Autumn and Andre breached their own duty under the Hack rationale, the trial court decided that it made no sense for State Farm to have to pay additional funds to Nancy. More particularly, the trial court found that

> 53. Even if Nancy has some equitable claim in this case, the appropriate remedy would not require State Farm to pay additional monies to her. Equity courts possess discretionary power to award damages to do complete justice, and courts are able to adjust remedies to grant necessary relief. W & W Equip. Co., Inc. v. Mink, 568 N.E.2d 564, 577 (Ind. Ct. App. 1991).

> 54. State Farm has already paid more than $270,000 to their named insured, Andre and Autumn Missig for property loss from the fire. Nothing prevented Andre and Autumn from paying part of these proceeds to Nancy except for their own unwillingness to do so. Neither equity nor justice

25

dictates a result in which State Farm pays Nancy more, when her contract buyer family members were over-compensated for their individual losses and should have equitably shared the proceeds with her.

Appellant's App. p. 33.

Andre's continued focus on State Farm's alleged breach of its duty under Hack disregards the trial court's conclusion that any action or inaction on State Farm's part was superseded when Andre and Autumn breached their duty by consciously refusing to pay Nancy any of the insurance proceeds. In short, the fact that Andre disapproves of the trial court's remedy does not render it erroneous.

Also, Andre argues in his brief on cross-appeal that State Farm had both actual and constructive knowledge of Nancy's ownership interest in the Kokomo Property. Assuming this to be true, this fact did not create an equitable duty on the part of State Farm to pay policy proceeds to Nancy. The precise language in Hack provides that an insurer is under a duty to disburse policy proceeds to a contract seller as though the seller's interest appeared on the policy if the insurer has knowledge of a buyer's covenant to insure for the seller's benefit. Hack, 596 N.E.2d at 400. Further, the court in Hack specifically found that a seller's insurable interest alone does not guarantee entitlement to the proceeds of a buyer's insurance. Id. at 399. Thus, the main inquiry is not State Farm's knowledge of Nancy's ownership interest in the Kokomo Property; rather, the operative inquiry under Hack is State Farm's knowledge of any covenant that Andre and Autumn had to insure the Kokomo Property for Nancy's benefit. And no evidence was presented at trial that State Farm had knowledge of any such covenant. No one told

26

Richardson of any such covenant in the April 2002 land purchase contract at the time that the policy was applied for. It is also undisputed that Nancy never recorded the land purchase contract. Tr. p. 307. Finally, Autumn represented to Dunham after the fire that she and Andre had purchased the house on contract and that Nancy no longer had an interest in it. Id. at 116.

In sum, State Farm was never on notice that Andre and Autumn had covenanted to insure the Kokomo Property for Nancy's benefit, and thus State Farm did not have a duty to pay Nancy the policy proceeds. And under Andre and Nancy's theory of liability, an insurer would be legally obligated to pay policy proceeds to all parties that had a recorded interest in an insured property because the insurer would have constructive notice of the interest. Again, such a result would run contrary to the holding in Hack, which provides that an insurable interest alone does not guaranty entitlement to the proceeds of a buyer's insurance. Hack, 596 N.E.2d at 400. Also, neither Andre nor Nancy have directed us to any case that requires an insurer to affirmatively check the recorder's office to verify all interested parties on a given property before issuing a policy or disbursing the proceeds.

Even if State Farm had been put on notice of the April, 2002 land purchase contract between Nancy, Andre and Autumn (which it was not), that contract merely required Andre and Autumn to pay for the insurance—it did not require Andre and Autumn to obtain homeowners' insurance for Nancy's benefit. As a result, the trial court's finding and conclusion that, "There is no evidence that State Farm's agents had

27

knowledge of any duty Andre and Autumn had to insure the property for Nancy's benefit, contrary to the facts in the Hack case," appellant's app. p. 32, was correct, and its September 24, 2012 Judgment and Order was not contrary to the rule announced in Hack. For all of these reasons, Andre's cross-claim fails.

## VI. CONCLUSION

In light of our discussion above, we conclude that the trial court properly entered judgment for Nancy against Andre and Autumn for the full unpaid balance of the land contract including interest, plus a lien and constructive trust as to the Windfall Property. We also conclude that the trial court properly determined that State Farm was not obligated to pay additional proceeds to Nancy because it already paid the required funds to Andre and Autumn, the named insureds under the policy. Indeed, Autumn and Andre could have shared the proceeds they received from State Farm with Nancy, but chose not to do so.

As for Andre's cross-claim, we conclude that the trial court properly entered judgment for State Farm. Andre waived many of the issues, and there was no evidence that State Farm breached any duty of good faith and fair dealing to Andre. Moreover, no evidence was presented that Andre had any contractual or statutory right of indemnity against State Farm.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and VAIDIK, J., concur.

28